R. M. KIRK *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY CO.

Submitted on briefs Nov. 2, 1894. Affirmed Nov. 16, 1894.

No. 9103.

**When the liability of a common carrier, as such, ceases.**

In the case of portable boxes or packages of valuable merchandise, the liability of a railway company as common carrier does not terminate until the goods are removed from the cars and placed in its freight room, ready for delivery to the consignee, and the consignee has had a reasonable time thereafter to remove them.

Facts stated, rule applied.

> A valuable box of merchandise was left in the car in which it was transported, and, over forty eight hours after the car arrived at the place of consignment, was stolen from the car. It did not appear that there was any special reason for leaving the box in the car, or that there was any custom or agreement to deliver such packages to the consignee directly from the cars. *Held,* that defendant's liability as common carrier had not terminated.

Appeal by defendant, Chicago, St. Paul, Minneapolis and Omaha Railway Company, from an order of the District Court of Pipestone County, *Frances Cadwell,* J., made July 3, 1894, denying its motion for a new trial.

*S. L. Perrin,* and *Lorin Cray,* for appellant.

If the strict liability of the defendant as a common carrier had not, as a matter of law, expired before these goods were stolen, it was at least a question for the jury whether or not it had so expired. No negligence on the part of the company is shown and none claimed. The company could use a car for a warehouse as well as a building. *Derosia* v. *Winona & St. Peter R. Co.,* 18 Minn. 133; *Pinney* v. *First Division St. Paul & P. R. Co.,* 19 Minn. 251.

*P. P. Cady,* for respondent.

The appellant does not attempt to show it had no warehouse at Pipestone, the destination of the goods in question, to justify leaving them in its car.

The liability of defendant as common carrier ceases only after the safe arrival and storage of the goods in the station, and then the liability as warehouseman commences. *Bartholomew* v. *St. Louis J. & C. R. Co.,* 53 Ill. 227; *Rice* v. *Boston & W. R. Co.,* 98 Mass. 212.

There was no question of fact to go to the jury on that point. Had such a question been submitted to the jury by the court and the jury found in favor of the defendant, the verdict would have been set aside.

MITCHELL, J. This action was brought to recover the value of certain goods delivered by plaintiff to defendant, a common carrier, for transportation, and which were stolen while in defendant's pos-

session. Both the place of shipment and the place of destination were on defendant's road. The goods were contained in a box, and weighed 75 pounds, and were of the value of about $70. The plaintiff shipped the goods consigned to himself. He did not reside, nor had he an agent, at the place of consignment, and his residence was unknown to the defendant. The car containing the box arrived at the place of destination about half past six o'clock on Thursday evening, August 10, 1893, but the goods were never unloaded from the car. The car was left "sealed," but not locked. The last that was seen of the goods was Saturday evening, when the defendant's agent saw them in the car. When plaintiff called for them, on Monday morning, it was discovered that some one had broken the seal of the car and stolen the box.

It does not appear where the car was left standing, or whether it was at a place suitable for the delivery of goods to consignee. There was evidence that the "station" was open for the delivery of freight on Friday and Saturday from 7 a. m. to 6:30 p. m., but there is no evidence that this box was ready for delivery during that time, although it is perhaps fairly inferable from the circumstances that had plaintiff called for it on either of these days defendant's agent could and would have gotten it for him out of the car. No reason was shown why defendant left the box in the car, instead of placing it in the freight room. It does not appear that the defendant had no freight room, or that there was any necessity for keeping such portable packages in the car, or that there was any general custom at that station of delivering such packages from the car to the con signees. On this state of the evidence the court directed a verdict for the plaintiff.

The only question raised on this appeal is whether the defendant's liability as carrier had terminated when the goods were stolen, or, at least, whether, under the evidence, that question should not have been left to the jury. This court has had occasion in at least three cases to consider somewhat at length the old and somewhat mooted question when and under what circumstances the peculiar liability of a ·common carrier as such may be terminated before the goods have passed into the possession or custody of the consignee. *Derosia* v. *Winona & St. Peter R. Co.,* 18 Minn. 133 (Gil. 119); *Pinney* v. *First Division St. Paul & P. R. Co.,* 19 Minn. 251

(Gil. 211); *Arthur* v. *St. Paul & Duluth R. Co.*, 38 Minn. 95, (35 N. W. 718.)

In the first of these cases it was held that if the consignee resides elsewhere than at or in the immediate vicinity of the place of final destination, has no agent there, and his residence is unknown to the carrier (which was this case), the carrier can place the goods in its freight house, and after keeping them a reasonable time, if the consignee does not call for them, its liability as carrier ceases.   We do not mean to lay down as an inflexible rule, applicable to all cases, that in order to terminate the carrier's liability the goods must be removed from the car and put into the carrier's freight house.   The nature of some kinds of goods, such as coal, lumber, and the like, precludes this.   It is usual for the consignees themselves to unload and carry away these kinds of freight directly from the cars.   It is also true, as suggested by defendant's counsel, that there is nothing to prevent a carrier, at least under special circumstances, from using the car as its warehouse for the storage of freight.   But in the case of portable boxes or packages of valuable merchandise we think that, under any ordinary circumstances, public policy requires that it should be held the inflexible rule that in order to terminate the carrier's liability he must remove the goods from the car in which they were transported and place them for safe keeping in his freight house.   We will take notice of the fact that it is the general custom to do so with this class of goods, and to deliver them to the consignees from the freight room, and not from the car.   To allow the carrier to terminate his liability for such kinds of goods by any less formal and expressive act would be against public policy.   The unloading of cars may be, and often is, delayed for the mere convenience of the carrier; and to permit him in such cases to say that the cars constituted his warehouse for the time being, and that if the goods had been called for they would have been delivered to the consignee, and therefore he is not liable for their loss, would inaugurate a very dangerous rule.

If the facts existed which had terminated defendant's liability as a common carrier, the burden was on it to prove them, and this it certainly failed to do, even under the most favorable view of the law.   The court was right in directing a verdict for plaintiff. We are by no means sure that this direction would not have been

correct even conceding that defendant's liability was only that of a warehouseman; for it would seem grossly negligent to leave a car containing portable packages of valuable merchandise unlocked, and merely fastened with a strip of tin, called a "seal," which any one could easily remove.

Order affirmed.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 60 N. W. 1084.)