# Beaumont, Appellant, v. Philadelphia & Reading Railway Company.

*Carriers—Common carriers—Railroads—Unloading freight.*

1. It is ordinarily the duty of the carrier to unload the freight and deposit it in a suitable place at which the consignee may receive it; but there is an exception to this rule in the case of bulky freight as to which in the case of shipment by cars the carrier is not required to remove it from the car, but discharges its obligation by delivering the car in a safe and convenient position for unloading at the place designated by the contract, or, in the absence of such designation, on its side track in the usual and customary place for unloading by consignees.

2. Where a railroad company places on a side track conveniently located for the removal of freight, a car containing four segmental castings each weighing about two and one-half tons and notified the consignee, the railroad company has done its full duty, and cannot be held liable for an injury to one of the castings while it is being unloaded by a teamster employed by the consignee, who has full charge and direction of the work.

3. Where an owner or consignee accepts freight in a car, and undertakes to unload it, he is responsible for any injury incurred during the progress of the unloading.

Argued Oct. 7, 1908. Appeal, No. 37, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., June T., 1904, No. 4,158, on verdict for defendant in case of Charles O. Beaumont, trading as Joseph Oat & Sons, v. Philadelphia & Reading Railway Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Affirmed.

Trespass against a common carrier for damages caused by the breaking of a casting while being unloaded from a car. Before AUDENRIED, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[The defendant's duty with respect to these belts as a common carrier had ended. After the arrival of the belts in the city and notice to the consignee of their arrival, the duty of the defendant with respect to them was only that of warehouse keepers. The defendant is responsible for the loss of the belt

that was broken only if its servants, acting within the scope of their authority, were guilty of some act of negligence which resulted in the breaking of the belt.] [3]

Plaintiff presented these points:

1. It was the duty of the defendant to safely unload the casting from its car, and as it is undisputed that the casting was broken in unloading, the burden of proof is on the defendant to prove that it was free from negligence. Unless you find the defendant free from negligence in unloading the said casting, you will find a verdict for the plaintiff. *Answer:* Refused.

2. Under all the evidence your verdict must be for the plaintiff. *Answer:* Refused. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Henry Spalding,* with him *David N. Fell, Jr.,* for appellant.— The warranty of the carrier as an insurer is broken by non-delivery, and the question of negligence in the performance of its duty to deliver safely is, therefore, immaterial: Forbes v. Railroad Co., 133 Mass. 154; Eagle v. White, 6 Wharton, 505; DeMott v. Laraway, 14 Wendell, 225.

Castings are not within the exception: Eagle v. White, 6 Wharton, 505; Graff v. Bloomer, 9 Pa. 114; Shenk v. Philadelphia Steam Propeller Co., 60 Pa. 109; Chicago & Rock Island R. R. Co. v. Warren, 16 Ill. 502; Covington Stock-Yards Co., v. Keith 139 U. S. 128 (11 Sup. Ct. Repr. 461); Ritz v. R. R. Co., 3 Phila. 82.

*John G. Lamb,* for appellee.—Heavy castings are within the exception: Gregg v. R. R. Co., 147 Ill. 550 (35 N. E. Repr. 343); Kirk v. Ry. Co., 59 Minn. 161 (60 N. W. Repr. 1084); Lewis v. R. R. Co., 52 Mass. 509; Sweet v. Barney, 23 N. Y. 335; Loveland v. Burke, 120 Mass. 139.

OPINION BY HENDERSON, J., February 26, 1909:

The counsel for the appellant and the appellee do not disagree

in regard to the obligation of a carrier to transport safely and make delivery to the consignee, and that ordinarily it is the duty of the carrier to unload the freight and deposit it in a suitable place at which the consignee may receive it. They agree, too, that there is an exception to this rule in the case of bulky freight as to which in the case of shipment by cars the carrier is not required to remove it from the car, but discharges its obligation by delivering the car in a safe and convenient position for unloading at the place designated by the contract or, in the absence of such designation, on its side track in the usual and customary place for unloading by consignees. The appellant contends, however, that this case is not within the exception. The contract was for the transportation of four iron castings consigned to the plaintiff to be delivered at Twenty-third and Arch streets, Philadelphia. Each of them was a segment having a chord of twelve feet and weighing about two and one-half tons. The car on which they were placed arrived safely at the destination, was placed on a side track conveniently located for the removal of the freight; the consignee received notice of its arrival, sent teamsters with wagon to take it away and the man in charge for the plaintiff receipted for the property. The learned trial judge instructed the jury that this was a performance of the contract of carriage by the defendant and the facts, we think, bring the case within the exception to the general obligation on a carrier to unload freight. This exception doubtless has its origin in the fact that where lumber, coal, grain, ore and like merchandise is transported it is more convenient for the consignee to take the freight from the car than after it is discharged on the ground or in a warehouse. Convenience has established the custom and the law takes notice of such custom: Pitts., Cinn. & St. Louis Ry. Co. v. Nash, 43 Ind. 423; Kirk v. Chicago, etc., Ry. Co., 59 Minn. 161; Gregg v. Ill. Cent. R. R. Co., 147 Ill. 550; Hutchinson on Carriers, sec. 711; 4 Elliott on Railroads, sec. 1521. In the case of valuable merchandise and portable packages there is obvious propriety in requiring the carrier to remove the goods from the car and place them in its freight house for safe-keeping, but this reason does not hold in the case of bulky and heavy material of a kind not subject to the action of the ele-

ments, not easily handled and which would be less favorably situated with reference to the convenience of the consignee when off the car than on it, as in the case of stone, metal, lumber, etc., which is more easily delivered from the car than from the ground. The plaintiff's castings were of this class. No advantage could result to the consignee by delivering such freight on the ground in the yard, and there is nothing in the case to indicate that the plaintiff expected such delivery. On the contrary, it is apparent that the plaintiff's servants came to the yard with the expectation of getting the freight from the car. The castings were not only heavy but bulky and such as could not be handled with profit either to the carrier or the consignee except when actually necessary, and it is reasonable to suppose that it was not in contemplation by the parties that this freight would be delivered onto the ground or platform and the plaintiff left to get it away as best he could. The fact that the defendant had a permanent steam crane in the yard used for the transfer of heavy freight does not affect the defendant's liability. That was a convenience rather for shippers than for the company. It would probably have a tendency to attract patronage to that yard because of the facility for moving such merchandise, but its presence would not increase the obligation of the defendant. Without it the burden would be on the receiver of such freight to bring with him a large force of men or mechanical apparatus sufficient to make the transfer. It was, therefore, greatly to the advantage of the plaintiff to have the use of the crane without cost.

There is another view of the case also which affects the right of recovery. The evidence introduced by the plaintiff shows that the teamster who went for the freight directed the method of unloading and used his own judgment as to the manner in which he loaded his wagon. The casting was lying on its side; the teamster was warned that his wagon was not large enough to hold it and he required that it be turned so that it would lie in the cradle of the wagon with its ends up. An employee of the defendant assisted in the operation and it was while the casting was being shifted in accordance with the teamster's direction that the piece was broken. The teamster came there with authority to take the freight and he represented the plaintiff for

that purpose, and this subjects the plaintiff to the operation of the rule that where the owner or consignee accepts the freight in the car and undertakes to unload it he is responsible for any injury incurred during the progress of the unloading: Moore on Carriers, p. 152; Lewis v. Western R. R. Co., 52 Mass. 509; Loveland v. Burke, 120 Mass. 139; Sweet v. Barney, 23 N. Y. 335; 5 Am. & Eng. Ency. of Law (2d ed.), 193. For any interference with or control of the manner of delivery by the consignees the defendant is not responsible. It would be a harsh application of the doctrine of responsibility to hold that a carrier was liable for an accident in the discharge of freight made in a manner requested by, and for the convenience of, the owner. There is nothing in the case to indicate that there would have been any difficulty in transferring the castings to the ground or platform or onto the wagon sent by the plaintiff if the wagon had been large enough to receive it provided the transfer had been made with the casting lying flat. The accident occurred because of the method adopted by the appellant's agent, for which we think the defendant is not responsible.

The judgment is affirmed.