# CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY v. G. A. KELM.[1]

May 9, 1913.

Nos. 18,221—(174).

Carrier — liability after delivery of freight cars.

1. Where a railway company places bulky freight, shipped in carload lots, and to be unloaded by the consignee, at the point designated by the consignee as the place where he desires to unload it, and possession thereof is turned over to and taken by consignee, so that the company has no further duty to perform, its absolute liability as carrier terminates, and it is liable for subsequent damage to the property only when such damage results from its negligence.

Same — evidence.

2. The evidence shows that the local station agent had no authority to make a contract binding plaintiff to pay the damage to defendant's property caused by a fire after the car had been turned over to defendant to be unloaded, and plaintiff is not estopped from denying such contract by retaining a payment to which it was entitled, independent of such contract, although claimed to have been made thereunder.

Action in the district court for Washington county to recover $69.95, charges due plaintiff upon shipments of hay to Stillwater in that county. The answer set up a counterclaim for damage caused by fire and water to a carload of hay after its arrival at Stillwater and while in plaintiff's possession, and an agreement with plaintiff by which defendant was to sell the damaged hay and credit proceeds of the sale upon defendant's claim against plaintiff. The case was

---

[1] Reported in 141 N. W. 295.

Note.—On the question what is a reasonable time for removal of goods by consignee, after which the liability of the carrier as such terminates, see notes in 8 L.R.A.(N.S.) 240; 16 L.R.A.(N.S.) 935; and 25 L.R.A.(N.S.) 938.

As to necessity of notice of arrival of goods to reduce liability of carrier to that of warehouseman, see note in 18 L.R.A.(N.S.) 427. And for the right of a carrier to terminate its responsibility as warehouseman, see note in 9 L.R.A. (N.S.) 577.

tried before Stolberg, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. From the judgment entered pursuant to the order, defendant appealed. Affirmed.

*H. H. Gillen,* for appellant.

*F. W. Root* and *J. C. Nethaway,* for respondent.

TAYLOR, C.

Plaintiff brought suit to recover its freight charges for transporting two carloads of hay for defendant in the year 1911. Defendant admitted plaintiff's cause of action, and interposed a counterclaim for damages to a carload of hay shipped by him in the year 1910. The trial court found that defendant was not entitled to recover upon his counterclaim, and rendered judgment in favor of plaintiff for its freight charges. Defendant appealed from the judgment, and contends that the trial court erred in not allowing the counterclaim.

The facts stated briefly are as follows: Plaintiff has a line of railway extending from Kansas City, Missouri, to Stillwater, Minnesota, at which place it has a station, and industrial and other tracks. Defendant has a warehouse at Stillwater, located at some distance from plaintiff's tracks, but adjacent to an industrial track of the Northern Pacific Railway. Defendant shipped four carloads of hay from Kansas City to Stillwater over plaintiff's railway, and on the morning of July 5, 1910, plaintiff's local station agent at Stillwater notified him that the hay had arrived, and asked him where he wanted the cars "spotted" for unloading. Defendant replied that he wanted them placed upon the track adjacent to his warehouse, and directed the agent to deliver them to the Northern Pacific Railway for the purpose of having that company place them at the point designated. Before noon on the fifth plaintiff delivered them to the Northern Pacific Company as directed, and on the same day they were transported by that company to the place designated by defendant, and there "spotted" ready for him to unload them. Defendant began unloading on the following day, the sixth, and unloaded three cars safely, but between four and five o'clock in the afternoon of the sixth the fourth car caught fire, and the hay therein was damaged by fire and water. It is not claimed that the fire or the damage resulted

from any fault or negligence of plaintiff. After the fire, plaintiff's local station agent "requested defendant to pay the freight on said car of hay, and sell the damaged hay, make out his bill, and send claim to railway company, and it would pay the difference." Defendant did as requested, and these damages constitute the counterclaim in controversy. The station agent denies saying that the company would pay the claim, and testifies that he had no right to say what the company would do, and no authority to settle claims. There is no evidence of any kind tending to show that he had such authority, unless such authority may be inferred from the bare fact that he was local station agent.

1. Where a carrier transports bulky freight, in carload lots, to its destination, and, to enable the consignee to unload it conveniently, places the cars upon a track designated by the consignee for that purpose, or, if he has made no such designation, upon a track proper for that purpose, and he has notice thereof, it is held by several courts that the carrier has performed the last act required by its duty to the consignee, that the delivery is complete, and that the carrier's liability as carrier has terminated. Pittsburgh v. Nash, 43 Ind. 423; Pindell v. St. Louis, 41 Mo. App. 84; Cohen v. Missouri, 126 Mo. App. 244, 102 S. W. 1029; Chicago v. Kendall, 72 Ill. App. 105; Gregg v. Illinois, 147 Ill. 550, 35 N. E. 343, 37 Am. St. 238; Paddock v. Toledo & O. C. Ry. 11 Ohio C. D. 789. See also Independence Mills v. Burlington, 72 Iowa, 535, 34 N. W. 320, 2 Am. St. 258, and South v. Wood, 66 Ala. 167, 41 Am. Rep. 749.

It is held by other courts that the liability of the carrier continues for such length of time after the cars are placed ready for unloading as is necessary to afford the consignee, proceeding with diligence, a reasonable opportunity to remove his goods. Whether the carrier's liability as to bulky freight, shipped in carload lots, and to be unloaded by the consignee, terminated when the carrier, with the knowledge of the consignee, "spotted" the cars at the point designated by the consignee as the place where he desired to unload them, did not arise and was not considered in Derosia v. Winona & St. P. R. Co. 18 Minn. 119 (133), Pinney v. First Div. St. P. & P. R. Co. 19 Minn. 211 (251), or Kirk v. Chicago, St. P. M. & O. Ry. Co. 59

Minn. 161, 60 N. W. 1084, 50 Am. St. 397, although the latter case suggested a distinction between bulky freight, usually unloaded by the consignee, and package freight, usually unloaded by the carrier and placed in its warehouse for future delivery.

In referring to the stringent rule of liability imposed upon carriers, it is said in Arthur v. St. Paul & D. R. Co. 38 Minn. 95, 100, 35 N. W. 718: "The reason of the rule, in the language of Best, C. J., in Riley v. Horne, 5 Bing. 217, is that, 'when goods are delivered to a carrier, they are usually no longer under the eye of the owner. He seldom follows or sends any servant with them to their destination. If they should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them, or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss. His witnesses must be the carrier's servants, and they, knowing that they could not be contradicted, would excuse their masters and themselves.' "

And it is further said in the same case that this liability terminates, "whenever the care and custody of the property has passed from the carrier to the owner, or some bailee of his own choosing, or whenever the owner has, after its arrival at its destination, had a reasonable opportunity of taking the property into his own charge. The crucial test is whether, having proper regard to the principles upon which the carrier's liability rests, the property has so far passed out of the care and custody of the carrier or his servants, into that of the owner, that there is no longer any occasion, within the reason of the rule, for further holding the carrier to this strict liability. So long as the reasons continue, the liability should also continue; when they cease, it should cease."

In Naas v. Chicago, Rock Island & Pacific Ry. Co. 96 Minn. 84, 104 N. W. 717, the trial court charged the jury, in effect, that, from the time the consignee had notice that the car was placed upon a proper unloading track ready for him to unload, the company was relieved from liability. A verdict was returned for the company, and, on motion of the plaintiff, a new trial was granted by the trial court. On appeal this court reversed the order granting a new trial, and directed judgment for the company. This decision necessarily

held that the above instruction was correct, and that the liability of the carrier terminated when the car was placed upon a proper unloading track and the consignee had knowledge of that fact.

1. As defendant's four carloads of hay had been placed at the point designated by him, for his convenience in unloading them, and the possession of the hay had been turned over to and taken by him for the purpose of removing it, and he had actually begun such removal, so that the final act required of the plaintiff in the performance of its duty had been completed before the fire, plaintiff's absolute liability as carrier had terminated, and it was liable for the subsequent damage to the property only in case such damage resulted from its negligence. In this case it is not claimed that the damage to the hay resulted from any negligence on the part of plaintiff.

2. The only evidence in the case, bearing on the agent's authority to make a contract binding the company to pay defendant's loss, is the testimony of the agent himself that he had no such authority. There is no evidence that this agent, or any other local agent, ever previously exercised or assumed to exercise such authority. Courts take judicial notice of whatever is generally known, including various generally known customs and methods of transacting business on the part of railway companies. Davis v. Kobe, 36 Minn. 214, 215, 30 N. W. 662, 1 Am. St. 663; Keyes v. Minneapolis & St. L. Ry. Co. 36 Minn. 290, 292, 30 N. W. 888; Kirk v. Chicago, St. P. M. & O. Ry. Co. 59 Minn. 161, 164, 60 N. W. 1084, 50 Am. St. 397; Braun v. Northern Pac. Ry. Co. 79 Minn. 404, 412, 82 N. W. 675, 984, 49 L.R.A. 319, 79 Am. St. 497. Were we to take judicial notice of the manner in which railway companies adjust and determine claims for damages, it would negative any authority in a local station agent to fasten any claim therefor upon the company. Such claims are passed upon and determined by officers of the company specially designated for that purpose, and not by station agents. There is nothing in the evidence, or in the manner in which plaintiff transacts business, from which it can be inferred, under the circumstances here existing, that the agent had authority to contract, on behalf of plaintiff, that the plaintiff would pay the defendant's loss.

3. Defendant paid the freight charges as requested by the agent,

and insists that, by retaining this payment, plaintiff became liable upon the contract made by the agent, on the ground that plaintiff could not accept its benefits and renounce its burdens. It is a sufficient answer to say that the charges for freight were due, and defendant merely discharged his legal obligation in paying them. The payment of a valid and undisputed past-due debt is not a sufficient consideration to support a new contract, or to be the basis of an estoppel.

The judgment appealed from is affirmed.