# Morris et al., Appellants, v. John Barton Payne, Director General of Railroads, Agent.

*Carriers—Common carriers—Railroads—Loading freight.*

Where a railroad company provides an electric crane, close by its track, to be operated by its own employees, for the convenience of shippers in loading heavy and bulky freight, the fact that no charge was made for the service does not relieve the company of liability for damages to freight caused by negligent operation of the crane, while it was in the sole control of the railroad company's employees.

Beaumont v. P. & R. Ry. Co., 38 Pa. Superior Ct. 224, distinguished.

Argued October 10, 1921.   Appeal, No. 95, Oct. T., 1921, by plaintiffs, from judgment of C. P. No. 2, Phila. Co., March T., 1920, No. 4761, refusing to take off nonsuit in the case of Sydney S. Morris, Cameron Macleod and Rudolph Baeuerle, copartners, trading as Baeuerle and Morris, v. John Barton Payne, Director General of Railroads, Agent.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ.   Reversed.

Trespass to recover damages caused by the breaking of a casting while being loaded by a common carrier. Before BARRATT, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered a compulsory nonsuit which it subsequently refused to strike off.   Plaintiff appealed.

*Error assigned* was the refusal to strike off nonsuit.

*W. Logan MacCoy,* of *MacCoy, Evans, Hutchinson & Lewis,* for appellants.—In order to make the crane operator the servant of the plaintiff, it would be necessary for the plaintiff to assume control over him: McColligan v. P. R. R., 214 Pa. 229.

The mere presence of the plaintiff's teamster does not relieve defendant of liability: Eckert v. P. R. R., 211 Pa. 267.

*Francis B. Biddle,* and with him *Sharswood Brinton,* for appellee.—The case is governed by Beaumont v. P. & R. Ry. Co., 38 Pa. Superior Ct. 224.

Aside from the Beaumont case, the plaintiffs were not entitled to recover: Wischam v. Rickards, 136 Pa. 109; Connelly v. Faith, 190 Pa. 553.

OPINION BY ORLADY, P. J., March 3, 1922:

The plaintiffs are manufacturers of copper, brass and cast iron work, and constructed for a customer a specially designed machine to be used for boiling sugar cane syrup, consisting of heavy iron castings, weighing from 1½ to 2 tons, and on April 11, 1919, in delivering these castings to the railroad company for transportation, employed a teamster to haul the sections to the regular loading place for such freight. The wagon was drawn as close as possible to an electric crane which was erected by the railroad company on its ground, and furnished service to shippers in lifting heavy or bulky articles that could not be moved by hand. The crane stood close to the railroad track and was operated by a winch under the control of an employee of the defendant company, whose station was in a small cage about 16 feet above the level of the ground and over the crane, so that while his position was stationary in the cage, the car of the crane bearing the load moved along an overhead track to the car on which the freight was to be deposited.

On the trial it was admitted, as stated in the affidavit of defense, "it was true that the crane mentioned was the property of the defendant, and that the man operating the same was the servant of the defendant." It clearly appears by the testimony that this crane was a facility erected, maintained and operated by the railroad on its property to safely transfer from wagons and trucks heavy and bulky freight to the cars. This particular item of freight was to be transferred from the truck employed by the plaintiffs, to a 35-foot open gondola car, by the use of the machinery under the control of the defendant's employee. The chains and cables attached to this crane were fastened to the casting on the wagon, when the crane operator, by use of levers in the cage, lifted it so as to clear the wagon and move it over to the car on the railroad track. The crane operator could see clearly all that was being done in arranging the casting for transference from the truck to the car,

174 MORRIS, Appellant, v. JOHN BARTON PAYNE.

Opinion of the Court. [78 Pa. Superior. Ct.

and in response to a signal—that the attachments were made—he had entire control of its movement. After the chains were affixed to the casting, the crane operator assumed control over it, and the plaintiff's driver had nothing to do with its movements. The first casting was safely delivered to the body of the gondola car, but in transferring the second one, by some misfortune it was dropped too suddenly, so as to fracture it.

The trial judge was of the opinion that because no special charge was made by the railroad company for the use of the crane, although owned by it and operated by one of its employees, the duty was upon the shipper to load bulky goods, not only deliver them to the freight station of the railroad company, but that the shipper must load them upon the freight car before he can be held to have delivered the freight to the railroad; and held that, while the crane was utilized by the plaintiff's driver to load this heavy iron casting, and while being operated by the defendant's employee, it was furnished by the railroad as a convenience rather for the shipper than for the company, and under a decision of the Superior Court, (Beaumont v. Phila. & R. R. R. Co., 38 Pa. Superior Ct. 224), directed a nonsuit to be entered.

We cannot agree with the construction placed on the case cited. The controlling facts of the cases are not parallel; in that case the teamster was warned that his wagon was not large enough to hold the freight, and he requested that it be turned so that it would lie in the cradle of the wagon with its ends up. An employee of the defendant assisted in the operation, and it was while the casting was being shifted, in accordance with the teamster's direction that the piece was broken. The teamster came there with authority to direct the handling of the freight, and he represented the plaintiff for that purpose, and this subjected the plaintiff to the operation of the rule, that where the owner or consignee accepts freight in the car and undertakes to unload it, he is responsible for any injury occurred during the prog-

ress of the unloading.  In the case before us, the plaintiff's driver had no control over the movement of the heavy freight from the truck to the railroad car.  The crane was entirely under the control of the railroad employee through the appliances erected by it to facilitate the movement of such unwieldy freight.  The crane operator was not in any sense the servant of the shipper, or subject to his direction.  Nor did he act under any direction from the driver, and only responded to the notice from the driver that the chains had been properly fastened to the cast, and it was then ready for his disposition.

It is not alleged that there were any defects in the fastenings or the manner of their application to the casting, so that the only question was whether, after lifting the freight, fastened by the chains and cables affixed to the crane, it was negligently handled in being transferred to the railroad car.

In McColligan v. Phila. & R. R. R. Co., 214 Pa. 229, Justice ELKIN tersely stated the rule to be, "The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done and the manner in which it shall be done." We do not consider it material that no special charge was made for the use of the crane; it was operated under the exclusive control of the railroad company to facilitate its work, and was at all time under its control.

The judgment is reversed, the record remitted to the court below with a venire facias de novo.