BOYNTON et al. (SUPREME CAMP OF AMERICAN WOODMEN et al., Interveners) v. MOFFAT TUNNEL IMPROVEMENT DIST. et al.

No. 555.

Circuit Court of Appeals, Tenth Circuit.

March 29, 1932.

Rehearing Denied May 13, 1932.

Clayton C. Dorsey, of Denver, Colo. (John W. Davis, of New York City, James H. Pershing and Gerald Hughes, both of Denver, Colo., James M. Ogden, Atty. Gen., of Indiana, and Ernest L. Rhoads and Bernard J. Seeman, both of Denver, Colo., on the brief), for appellants.

Erskine R. Myer, of Denver, Colo. (Norton Montgomery, of Denver, Colo., on the brief), for appellees.

Before LEWIS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge (after stating the facts as above).

■ The plaintiffs and interveners have invested $6,677,000 in the obligations of the Moffat Tunnel district. Their money has been expended in the construction of the tunnel. They have not been paid their interest as it became due, although taxes have been collected for that purpose. **They have come into a court of competent jurisdiction, presented their grievances, and have asked for a hearing.** They are stopped at the threshold, and their bill dismissed. The Constitution of the United States (article 3, § 2) confers upon courts of the United States the power to determine controversies between citizens of different states, and to cases arising under the Constitution. The statutes of the United States (Jud. Code § 24 [28 USCA § 41]) confer upon those situated, as are these plaintiffs, the right to invoke that jurisdiction. They have invoked it. It becomes then the duty of the federal court to hear and determine the controversy, unless the established principles of law relieve such court of that duty. The trial court found, at the time it dismissed the cause, that the state court had such exclusive control of the res that the federal court might not proceed. At that time, the custodial order of February 13, 1931, was in force. It is no longer in force, and since appeals in equity are trials de novo, and since equity speaks as of the present (Richardson v. Green [C. C. A. 9] 61 F. 423; City of Denver v. Mercantile Trust Co. [C. C. A. 8] 201 F. 790; 21 C. J. 663), we need not explore the effect of that order. Our task is to determine, upon the facts drawn onto the record by stipulation of the parties, whether the cause should stand dismissed, whether it should be reinstated and stayed, or whether the plaintiffs are entitled to a decree at our hands, on the record.

■ Questions involving conflicts of jurisdiction between courts are always delicate, and sometimes difficult. But neither the delicacy nor the difficulty of the task can justify a refusal to pass upon the controversy. Chief Justice Marshall, speaking for the Supreme Court of the United States, said many years ago that: "We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." Cohens v. Virginia, 6 Wheat. 264, 404, 5 L. Ed. 257. In more recent years, the Supreme Court, in dealing with a conflict between the state and federal courts, said that, while the task was not an agreeable one, "it is a question, however, which we are called upon, and which it is our duty to decide." Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 447, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764. In this case, fortunately, the task, while delicate, is not difficult, for the principles

**778**

governing its determination have been settled by decisions which are controlling upon us.

■■■ No question arises when the actions in the two courts are in personam; both may proceed; when one has gone to judgment, the judgment may be set up in the other action. It does not matter that both may involve the same controversy, for "a controversy is not a thing." Kline v. Burke Constr. Co., 260 U. S. 226, 230, 43 S. Ct. 79, 81, 67 L. Ed. 226, 24 A. L. R. 1077. The question arises when the action in one or the other court is in rem, and when it may be that the force of the court's decree will be exerted against specific property, and not alone against a person. When that situation exists, certain rules have been evolved designed to prevent a struggle between the officers of two courts for possession of, or control over, a thing. These rules, applicable alone to actions in rem, may be divided into two classes. The first is where one court has reduced the res to its actual possession, in which event the res is withdrawn from the judicial power of other courts. With that branch of the rule, we are not concerned, for there is and can be no claim that the fund is now in the possession of either court. The fund is now, and since the inception of both suits has been, in the possession of the commission. Both courts have issued personal injunctive orders directed to the members of the commission, but neither has reduced the fund to possession. Whether the state district court did at one time reduce the fund to custody is not now material; that order has expired; the Supreme Court of Colorado did not see fit to issue a similar order, but instead issued an injunction against those in possession of the fund.

■■■ We are concerned only with that branch of the rule which deals with the situation where property has not been actually seized by judicial process, but where it may later become necessary in order to effectuate the decree of the court, to seize it. Such suits are those to foreclose mortgages or enforce other specific liens, to administer trusts, to liquidate insolvent estates, and other suits of like nature; the rule is limited, however, to actions which deal either actually or potentially with specific property or objects. Kline v. Burke Constr. Co., supra; Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457; Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435; Wabash Railroad v. Adelbert College, 208 U. S. 38, 54, 28 S. Ct. 182, 52 L. Ed. 379; Farmers' Loan & Trust Co. v. Lake St. Rd. Co., 177 U. S. 51, 61, 20 S. Ct. 564, 44 L. Ed. 667; Ingram v. Jones (C. C. A. 10) 47 F.(2d) 135; Superior Oil Corp. v. Matlock (C. C. A. 10) 47 F.(2d) 993; Barnett v. Mayes (C. C. A. 10) 43 F.(2d) 521; Westfeldt v. North Carolina Mining Co. (C. C. A. 4) 166 F. 706; Merritt v. American Steel-Barge Co. (C. C. A. 8) 79 F. 228. Such actions are often designated, perhaps unhappily, as "quasi in rem," in order to distinguish them from the first class, which are designated as actions "in rem." Both in fact are actions in rem; in the first instance, possession of the res is actual, and, in the latter, potential. The federal court action falls within the latter classification; it is a suit to administer a trust in a specific res, the supplemental bond fund; plaintiffs assert an interest in that fund and pray for a receiver thereof; any decree rendered in favor of plaintiffs will operate on the fund. The action in the state court did not originally have to do with the res involved in this action, for it was not then in existence. If it was an action in rem at all, which we need not decide, it was because of its prayer to remove a cloud from the title of an entirely different res, to wit, real estate owned by plaintiff. It is claimed, however, that the state court action was converted into an action in rem, by the injunctive order issued by that court as to the res involved in this action. It is correctly argued that a court has inherent power to make such interlocutory orders as may be necessary to protect its jurisdiction, and to make certain that its eventual decree may not be ineffective. We have not been able to see what decree can be made in the state court suit, responsive to the issues, which might require any control over this fund. It is stipulated that plaintiff has never paid anything into the fund, so by no possibility would it be entitled to anything out of it. Plaintiff only pretends to represent property owners similarly situated,—those who have not paid their taxes. Those who have paid have no cloud on their titles; they have a suit to recover taxes paid, if anything. No property owner who has paid taxes into the fund is in court, asking for anything from the fund. The bondholders in the state court suit have, not only not asked for affirmative relief, but have challenged the jurisdiction of the court to act at all. Any amendment to the pleadings, or any order made, after the federal court suit was filed, would of course be ineffective to deprive that court of the jurisdiction over the res which attached with the filing of the bill. It is not to be assumed that the state court would direct the pay-

ment of the fund to parties not before it. But if the power existed, it was not exercised, for no dominion over the fund was exercised by the injunctive orders issued prior to the commencement of this suit; no change in the commission's possession was effected by these orders, they operating purely in personam on the members of the commission. Orders issued after the commencement of the action in the federal court would of course be ineffective to oust that court of a jurisdiction in rem which then attached. For these reasons we are unable to see wherein the state court suit involves the res which is the subject of the federal court action; but we feel it unnecessary to pass directly upon the point for reasons now to be stated.

The rule that as between two actions quasi in rem the one first filed excludes the later one is subject to an important and well-settled qualification, to wit, that the two actions shall invoke the same jurisdiction. This qualification is essential to the administration of justice; except for it, a stockholder could apply for a receiver and either indefinitely postpone relief to creditors or bondholders, or could require them to come to the court of the stockholder's selection. A recent case is Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 271, 72 L. Ed. 457, the decision of which, in our judgment, controls the disposition of this case. In that case the federal court appointed a receiver in an action brought by a creditor. Prior to the filing of the bill in the federal court, a stockholder had filed a bill in the state court, in which a receiver for the same properties was applied for. Both actions were quasi in rem; in both cases, control over the same property was necessary in order to effectuate any decrees which might later be made. The same res was involved in the two suits. The state court was prior in time, and, by the general rule, was therefore, prior in right. But the Circuit Court of Appeals held that the two actions were so different that there was no conflict between the two jurisdictions, and that therefore the federal court should proceed, irrespective of the pendency of the state court action. Harkin v. Brundage (C. C. A. 7) 13 F.(2d) 617. The Supreme Court reversed this ruling upon another point, but held that the holding of the lower court was correct in this respect. The Supreme Court held that the possibility of the issues in the state court suit being broadened by amendments to the pleadings after the federal court suit was filed did not oust the federal court of the right to proceed. The general rule, and its qualification, was laid down in this language: "As between two courts of concurrent and coordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by filing the bill is entitled to retain it without interference and cannot be deprived of its right to do so, because it may not have obtained prior physical possession by its receiver of the property in dispute; but where the jurisdiction is not the same or concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction."

Applying that rule to the facts, the court said, at page 45 of 276 U. S., 48 S. Ct. 268, 271: "We conclude that if the decision of this motion turned on the question of priority of jurisdiction on the face of the two bills, it could not be said that the courts were exercising concurrent jurisdiction. The creditor's bill conferred on the court the power to enjoin the judgments and executions of creditors and the establishment of undue preferences among the creditors, whereas in the stockholder's bill no such remedy was asked and could hardly be afforded without amendment and further allegation and prayer."

The Supreme Court relied upon the opinion of Judge Grubb in the leading case of Empire Trust Co. v. Brooks (C. C. A. 5) 232 F. 641, and characterized it as "a carefully reasoned opinion." In that case the state action was first brought; it was an action by a bondholder and stockholder for a receiver of a corporation, and to marshal its assets and liquidate its affairs. It was an action quasi in rem. Later a suit was brought in the federal court to foreclose a mortgage. It was held that the federal court suit should not give way to the prior action, because "the issues and the subject matter of the two suits were not essentially the same," and there was therefore no conflict of jurisdiction. The court held it was not a question of the capacity of the two courts to take jurisdiction, but what jurisdiction had been invoked by the pleadings in the two cases. Practically all of the opinion, and most of the cases cited, are applicable to this case. We quote but two excerpts, at pages 645 and 648 of 232 F.:

"However, where the issues in the subsequent suit are different from those involved in the first suit, and the subject-matter is not identical, there can be no infringement

of the jurisdiction of the court in which the first suit is pending, by reason of the institution of the second suit in a court of concurrent jurisdiction."

"Conflict of jurisdiction as to the subject-matter of the litigation does not mean merely that the two suits relate to the same physical property. Moran v. Sturges [154 U. S. 256–283, 14 S. Ct. 1019, 38 L. Ed. 981] holds directly to the contrary. It means that the issues involved, relief prayed for, and parties to the two suits are so substantially alike that the lis pendens of the last brought is included in the first. Unless it can be said that the issues involved, the relief sought, and the parties to the suit in the federal court were included substantially in the lis pendens of the prior suit in the state court, the jurisdiction of the former did not conflict with that of the latter."

In McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 54 L. Ed. 762, a controversy existed between the state of South Dakota and nonresident heirs over an estate then in the possession of an administrator appointed by a state court. The nonresidents brought an action in the federal court against the administrator to recover the estate. The trial judge stayed the action in the federal court. The Court of Appeals dismissed an application for a writ of mandamus to require the federal District Court to proceed with the case. 187 F. 915. The Supreme Court reversed the Court of Appeals. Upon the trial of the mandamus action, it appeared that a similar controversy was pending in the state court, and it was contended that the federal court action could not proceed while the state court had possession of the res and was entertaining a similar controversy. The contention was denied by the Court of Appeals, Judge Walter H. Sanborn saying, in part:

"As the United States Circuit Court for the District of South Dakota had jurisdiction of the suit of the complainants below it was its duty to proceed to try and decide it. The McClellans had the constitutional right to the speedy and independent opinion of the judge of the federal court upon the issues they presented and the fact that the state was litigating, or was about to litigate, in its own courts the same issues constituted no sound reason why a national court should delay to adjudicate them. * * *

"Finally, counsel for the defendant urge that because the appeal in the state circuit court and the suit below seek to subject the same property which is now in the custody of the county court to their adjudications of the same issues the suit below should not be permitted to proceed. The record in hand, however, fails to satisfy that the complainants below, John C. McClellan, William S. McClellan, Walter McClellan and Edmund McClellan, have ever been or are parties to the litigation of those issues in the state courts. If they have not been, the court below first acquired jurisdiction of their claims to share in the trust estate in the hands of the administrator and of the right to enforce them, and, if they have been and are, the pendency of that litigation in the state court does not relieve the court below of its duty to proceed with all convenient speed to determine the issues in the suit before it, and to enforce its judgment as far as it may do so without unlawfully disturbing the legal custody of the property acquired by the state court. The pendency in a state court of a prior action or proceeding between the same parties for the same cause furnishes no ground for an abatement or for a stay of proceedings in a subsequent action in a federal court where no conflict arises between the courts over the custody or dominion of the property. And when a state court secures by proper process the custody or dominion of specific property, which it is one of the objects of the suit in the federal court to subject to its judgment or decree, the latter suit should not be stayed or dismissed, but should proceed as far as may be without creating a conflict concerning the possession of the property, and then, if need be, be stayed until the proceedings in the state courts have been concluded, or time for their termination has elapsed. Boatmen's Bank v. Fritzlen, 68 C. C. A. 288, 305, 135 F. 650, 667; Barber Asphalt Paving Co. v. Morris, 66 C. C. A. 55, 67, 132 F. 945, 949, 67 L. R. A. 761; Zimmerman v. So Relle, 25 C. C. A. 518, 521, 80 F. 417, 420; Williams v. Neely, 67 C. C. A. 171, 134 F. 1, 69 L. R. A. 232; Gates v. Bucki, 53 F. 961, 965, 4 C. C. A. 116, 120." McClellan v. Carland (C. C. A.) 187 F. 915, 919, 920–921.

The writ was issued, directing the District Court to proceed with the determination of the cause.

Mr. Justice Van Devanter succinctly stated the rule and its qualification, in Pacific Live Stock Co. v. Lewis et al. (Oregon Water Bd.), 241 U. S. 440, 447, 36 S. Ct. 637, 641, 60 L. Ed. 1084, as follows: "The rule that where the same matter is brought before courts of concurrent jurisdiction, the one first obtaining jurisdiction will retain it un-

til the controversy is determined, to the entire exclusion of the other, and will maintain and protect its jurisdiction by an appropriate injunction, is confined in its operation to instances where both suits are substantially the same; that is to say, where there is substantial identity in the interests represented, in the rights asserted, and in the purposes sought."

Our own court has had occasion to apply this rule. Ingram v. Jones, 47 F.(2d) 135. There are many other authorities, but the decisions cited from the Supreme Court of the United States, from the Eighth Circuit Court of Appeals, and from this court, are binding upon us.

There remains but to apply the rule. The plaintiffs herein are not parties to the state court suit, and that court cannot grant them the relief to which they are entitled. It is no answer to suggest that they might intervene in the state court; they have not, and are not required to. Our court, as apparently has the Colorado Supreme Court, has squarely held that the right to proceeds of taxes levied to pay bonds cannot be determined in the absence of the bondholders. St. Louis, etc., Ry. Co. v. Blake (C. C. A.) 36 F.(2d) 652; Denver Land Co. v. Moffat Tunnel Imp. District, 87 Colo. 1, 284 P. 339. No attempt had been made, when this action was brought, to bring the plaintiffs into the state court suit, if that could have been done. Even if they could be bound by class representation, which we do not intimate,[1] we have no hesitancy in holding that these nonresident plaintiffs, owning $4,855,000 of these bonds, are not fairly represented by two trustees, without beneficial interest, who owned no bonds even as trustee when this suit was brought, and by one holding a single bond for collection under suspicious circumstances. Smith v. Swormstedt, 16 How. 288, 302, 14 L. Ed. 942.

Furthermore, the issues in the state court suit are not identical with the issues in

this case; the most that can be said is that one issue in that suit is identical with one issue in this. The state court suit is an ordinary taxpayer's suit to relieve its property from a threatened tax lien; the issue in this suit is to recover on bonds, with no reference to what particular piece of property is assessed therefor. If the state court suit bars this action, then no bondholder can ever sue to recover on his bond as long as any taxpayer's suit is pending anywhere in the district. The result would be that municipal obligations could be successfully repudiated by the mere device of a succession of taxpayer's suits. This cannot be, and is not, the law. There is a much more striking difference between these actions than existed in the cited cases; and in addition thereto, as Judge Sanborn has said, the plaintiffs herein have never been and are not "parties to the litigation of those issues in the state courts." The court below first acquired jurisdiction to adjudicate the claims of these plaintiffs, and, again to use Judge Sanborn's language, "the pendency of that litigation in the state court does not relieve the court below of its duty to proceed with all convenient speed to determine the issues in the suit before it."

It has been repeatedly and conclusively determined that a decree of any court, state or federal, adjudging bonds to be invalid, is binding only upon bondholders who are parties thereto. That was the principle applied by the Colorado Supreme Court when it ordered that they be brought into the state court suit as parties, before further action by the state court. Bondholders' rights could not be adjudicated until the court acquired jurisdiction over them, and until they were notified and given an opportunity to be heard, for such are the requisites of the due process guaranteed to every citizen by the Constitution of the United States, and that is what the state Supreme Court said must be done before the trial court could proceed against them. If, therefore, this case should be stayed or dismissed, and the state court should ultimately determine the bonds to be invalid, this suit must then proceed, or, if again brought, the court in which it should be brought, national or state, must then determine the validity of the bonds of the plaintiffs and interveners in this action.

There are many authorities upon this point; we content ourselves with reference to three, one from the Supreme Court of the United States, one from the Eighth Circuit Court of Appeals, and one from our own court. In Stanly County v. Coler, 190 U. S.

---

[1] The two bondholders which were made defendants in the state court suit did not purport to appear for other bondholders. No other bondholder appeared, or in any way adopted, or acquiesced in, the pleadings of the two defendant bondholders in the state court. To the effect that a court cannot foreclose a defendant who is not a party, and who has not acquiesced in another's offer to represent him, see Wabash R. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Hamer v. N. Y. Railways Co., 244 U. S. 266, 37 S. Ct. 511, 61 L. Ed. 1125; Pana v. Bowler, 107 U. S. 529, 545, 2 S. Ct. 704, 27 L. Ed. 424; Empire v. Darlington, 101 U. S. 87, 25 L. Ed. 878; Brooklyn v. Ins. Co., 99 U. S. 362, 370, 25 L. Ed. 416; Compton v. Jesup (C. C. A. 6) 68 F. 263; Holderman v. Hood, 70 Kan. 267, 78 P. 838; Pomeroy's Code Remedies, §§ 285-298; 34 C. J. 1002.

437, 23 S. Ct. 811, 47 L. Ed. 1126, it appeared that the nonresident plaintiff owned certain bonds issued by Stanly county, N. C., and that the treasurer of the county had collected the taxes levied for the purpose of paying the interest on the bonds, and it was alleged that the treasurer held the funds "for the use and in trust for complainants." The Supreme Court of North Carolina (121 N. C. 394, 28 S. E. 539, 39 L. R. A. 439), however, had affirmed a decree of the superior court adjudging the bonds to be invalid, and enjoining the treasurer from paying out said sums to the plaintiff, to which proceeding the bondholder was not a party. The Supreme Court of the United States cited a number of its earlier decisions, dealing with bonds, stock, and other commercial securities, and held that the trial court correctly exercised its independent judgment, notwithstanding the prior contrary decision of the state courts on the same question. The Supreme Court further held that the trial court did not err in sustaining the validity of the bonds, and in entering a decree which enjoined the treasurer from using the fund for any other purpose than the payment of the interest coupons, and which appointed a receiver to take charge of the money in the hands of the treasurer.

In Fetzer v. Johnson (C. C. A. 8) 15 F. (2d) 145, 152, certiorari denied 273 U. S. 751, 47 S. Ct. 455, 71 L. Ed. 873, plaintiff brought an action against the officers of Grady County, Okla., to compel the payment of certain bonds of a drainage district in that county owned by him. The county officers answered that they had been enjoined by the state courts from paying said bonds, in a suit brought by a taxpayer for the purpose of relieving his land in the district from the lien of the bonds, and that the Supreme Court of Oklahoma had affirmed that injunctive decree. Mulligan v. Johnson, 77 Okl. 68, 186 P. 242. Fetzer, the bondholder, was not a party to the state court suit; the Eighth Circuit Court of Appeals held that therefore "his rights were not, and could not be, considered or adjudicated in that case." That court declined to follow the Oklahoma Supreme Court in its ruling that the organization of the drainage district was fatally defective, held the bonds were valid, and despite the permanent injunction then outstanding, decreed that a mandatory injunction issue against the county treasurer compelling the payment of the bonds. A precisely similar case is Town of Carmen v. James, 49 F.(2d) 91, where this court directed public officials to pay bonds, despite an outstanding order against the same official, enjoining him from paying them. These cases rest upon the authority of article 6 of the Constitution, that the Constitution, the laws, and the treaties of the United states "shall be the supreme Law of the Land." United States v. Peters, 5 Cranch, 115, 3 L. Ed. 53. From these controlling authorities we conclude that, since a permanent injunction does not relieve this court of its constitutional obligation to decide the pending case, a temporary injunction has no greater effect.

It should not be understood, from what has been said, that there is any difference in the power possessed by the state and national courts. Each has power to render binding judgments on parties properly before it; neither has power to bind parties who are not before it, as the Colorado Supreme Court has ruled in this particular case. A final decree in the state court suit would be persuasive authority in this court, but it would not be res judicata as to the parties in this case who are not parties in that; neither would a decree of this court be res judicata as to parties in the state court who are not parties here; and different issues are, to a considerable extent, presented in the two courts. The rules to which we have adverted are alike applicable to the courts of the two sovereignties.

One other reason, not so fundamental, why this action should proceed, may be mentioned. The conflict of jurisdictions which is here asserted cannot stand upon the relief sought by the pleadings in the two courts, because the pleadings do not concern the same res; the state court suit is one to remove a cloud from real estate; in the federal court suit, the res is the fund. The conflict, if there be one, must stand upon the interlocutory orders issued by the state courts and directed at the fund, which were outstanding when this suit was filed. But all such orders expired on December 23, 1931. Between that day and December 31, there was an interregnum in which no state court order was in effect; during that period, the federal court order was in effect; it was therefore in effect when the present order of December 31 was made, and of course prior thereto. Both state and federal court suits stood dismissed; both were on appeal, but jurisdiction over the fund was retained by the federal court, and relinquished by the state court. It is not disputed that the federal court action is one quasi in rem; even if its jurisdiction was suspended by the state court orders, which we have otherwise held, it nevertheless would be

true that, upon the expiration of the state court orders, the federal court jurisdiction would immediately revive and attach, and could not thereafter be ousted by a subsequent order.

The pendency of the taxpayer's suit was, therefore, no sound reason why this suit on the bonds should be dismissed. The defendants then assert that jurisdiction was ousted because the trial court permitted a resident bondholder to intervene, with the result that there is no diversity of citizenship between intervener and defendants. The plaintiffs are all nonresidents; they exercised their statutory right to sue in the federal court. Their right to relief, properly asserted, cannot be denied because the trial court permitted a resident to intervene. Supreme Tribe of Ben-Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673. Furthermore, plaintiffs present a substantial, and not a colorable, federal question when they contend that an order of the state court, issued in a case to which they are not parties and of which they had no notice, deprived them of the interest due on their bonds, and seriously affected the value thereof. Nor is the contention sound that this suit is not of equitable cognizance. It seeks to impress an existing fund with a trust, asks for a receiver and an accounting, and for a mandatory injunction as to future levies. These are for the equity side of the court. Other objections to the jurisdiction of the court have been examined and found to be without merit.

There remains but one question, Are the bonds valid? In the trial court, their validity was denied by counsel for the Denver Land Company, appearing amicus curiæ. The underlying question of the statutory power of the commission to construct a tunnel costing in excess of $6,720,000, without further legislative authority, was ably argued to this court in the lease case, Moffat Tunnel Improvement District v. Denver & Salt Lake Ry. Co., 45 F.(2d) 715, 720, 729, certiorari denied, 283 U. S. 837, 51 S. Ct. 485, 75 L. Ed. 1448, and we there had occasion to analyze the statute. We concluded that the legislative direction to build this tunnel at a designated place was a command, and not a mere authority; that the principal object of the act was the construction of the tunnel; that the powers of the commission were broad enough to accomplish this underlying purpose; from a comparison of earlier acts, and the legislative history of this act, we reached the conclusion that the statute did not contemplate an abandonment of the project if the tunnel was incomplete when the first issue of bonds was exhausted. The Legislature, in common with all mankind, must have appreciated the fact that no one could forecast with accuracy the underground conditions that might be met in the course of constructing a tunnel of this length; the cost could not therefore be estimated with accuracy. Certainly the Legislature did not contemplate the expenditure of more than $6,000,000 of taxpayers' money on a worthless hole in the ground. In that opinion we held: "It is true that the Act authorizes the issuance of $6,720,000 of bonds to pay for the construction of the tunnel; the Act of 1919, submitting the amendment to construct this tunnel, provided for the issuance of bonds, but further provided that 'Any contract or liability attempted to be entered into or created, in excess of the amount realized from the sale of said bonds, shall be void.' The legislature of 1922 must have been familiar with the 1919 Act, and the omission of such a clause should not be charged to inadvertence. Moreover, it is a matter of common knowledge that school buildings, courthouses and other public improvements are constantly being erected and paid for in part by bonds, and in part from building funds, current assessments or from other sources. Again, the statute expressly gives the Commission power to levy assessments upon real estate in the District 'for the purposes provided in this act' (section 11), the principal one of which was the construction of a tunnel; as well as power to levy assessments to pay interest on and retire the bonds (section 13). So the hypothesis that the Act contemplates only a tunnel costing $6,720,000 is unsound."

Two of the learned judges of the state district courts have examined the question at length and independently. Both reached the conclusion that the bonds were valid. We have read these opinions and fully concur therein, as far as they deal with the question before us. Judge Smith concluded his opinion as follows:

"It could not be implied that the Legislature intended to circumvent the very purpose of the Act, i. e., the building of the tunnel, which it has ordered the construction thereof, and neither it nor the Constitution has prohibited the employment of those means necessary to the execution of its order.

"When the proceeds of the bond issue of July 1, 1923, were exhausted, the tunnel was less than half finished. Had the Board abandoned its task at that point, all of its previous effort and the immense sum of money al-

ready expended would have been a total loss. Even a few months delay would have been well nigh fatal. Of course had the Legislature expressly prohibited the expenditure of more than the $6,720,000.00, any further expenditure would have been illegal, but no such prohibition can be found in the law, and the express mandate to construct the tunnel is inconsistent with any such limitation, by implication, upon the powers expressly granted, so the Board determined, after taking advice, as is conceded, not only from their own attorneys, but from other leading attorneys in this state as well as outside of the state, that it should provide for levies against the property in the district, for the purpose of paying the additional expenses and would anticipate those levies by issuing securities extending over a period of years in order to relieve the immediate burden of the taxpayers, and to prevent the danger of, if not the actual loss, of the sums theretofore expended. It not being disputed that the cost of the tunnel must be paid by assessments, the only real question remaining is whether this shall be paid for in cash, or whether the taxpayers shall have the benefit of spreading it over a number of years, and there being nothing in our Constitution, or in the Tunnel Act which prevents the Board from doing what it did, it would seem their action should be sustained."

We are, therefore, of the opinion that the bonds are valid, and the plaintiffs are entitled to relief. It follows that the decree of the trial court must be reversed, and the cause remanded, with directions to enter a decree for plaintiffs as prayed for.

Reversed with directions.