No. 13,375.

MOFFAT TUNNEL IMPROVEMENT DISTRICT ET AL. *v.* CITY AND COUNTY OF DENVER ET AL.

(25 P. [2d] 735)

Decided September 25, 1933.

Mr. Erskine R. Myer, for plaintiffs in error.

Mr. James D. Parriott, Mr. Frederick P. Cranston, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Plaintiffs in error were defendants below and for convenience will be referred to in this opinion as the district and the board, and the defendants in error here will be referred to as the county and treasurer.

The county filed its complaint on an open book account against the district and the board and prayed for judgment in the sum of $3,028.55, and for decree to the effect that the board pay all legitimate expenses of the collection of the Moffat Tunnel assessments incurred by the treasurer, and that the board be directed to advance such sums as are necessary to advertise and sell real estate for delinquent taxes.

The trial court entered judgment and decree in favor of the county and treasurer, and ordered the district and board to advance to the manager of revenue or treasurer whatever sums are needed for the proper and legitimate expense connected with the collecting of taxes and the advertising of real estate for sale, to which the district and board assign error and ask that the writ of error operate as a supersedeas, and that questions involved be finally determined on the application for supersedeas.

The issue is clear. Does the burden of bearing the expenses incident to the collection of the district taxes fall upon the county or upon the board as representative of the improvement district?

The county contends that the theory of the Moffat Tunnel Act is that the real estate owners of the district should bear the burden, and that no part of it should be

borne by those outside the district and should not fall on the county as a whole; and further, generally, that under the broad general powers given the board by subdivision H of section 8 of the Moffat Tunnel Act, the board has the authority to consider such tax collection expenses as part of the incidentals necessary for the accomplishment of the purposes of the act, and pay same.

The board insists that it is the mandatory duty of the treasurer under the act to collect the taxes, and sell the real estate upon which are delinquent Moffat Tunnel assessments at the same time and in the same manner as the law provides for the collection of state and county taxes; that there is no provision in the act for the payment of costs of collection and sale; that the treasurers of the counties lying in whole or in part within the district are made agents of the district by the act, and said treasurers are without authority to claim any compensation for such service, or retain any part of the funds collected to pay collection expenses or sale charges, and that no powers have been conferred on the board by the act for the payment of such collection expenses or sale charges; and finally, that the charges in this case are unreasonable.

The trial court determined the reasonableness of the charge from the evidence, which upon the records seems amply sufficient to sustain the finding that the charge was reasonable, and since the record discloses that the treasurer made no charge for himself personally, the findings of the trial court in that respect will not be disturbed, and the question of reasonableness no further discussed.

To determine the questions presented, the Moffat Tunnel Act must be considered and some parts construed. A part of section 16 which gives rise to the controversy here is as follows: "Such assessments shall be collected by the county treasurer of the respective counties in which said real estate is situated at the same time and in the same manner as is now provided by law for

the collection of taxes for county and state purposes, and if said assessments are not paid as herein provided, then the real estate shall be sold at the regular tax sale for the payment of said assessments, interest and penalties in the manner provided by the statutes of the state of Colorado for selling property for the payment of general taxes. * * * "

So far as words are concerned, the above portion of the act is silent as to the costs of collection. It is not rare that a statute does not contemplate all incidents that may arise in its enforcement. Ordinary reasoning will not permit us to think that the Legislature intended that the necessary help and expenses would go unpaid and the district fatten upon the labor and money wrung from other sources. An intention of the Legislature to put an additional expense upon the county and treasurer as the administrative agent of the district is not discoverable from the statute as enacted. Because the Legislature designated the treasurer to collect the tax, it did not intend thereby to increase the advantages or benefits of that office as an office, neither did it intend that the advantages or benefits of that office be diminished or that officer be deprived thereof. The Legislature never intended to disown its own creature and leave it on the doorsteps of the county. As to operation, it was designed to be self-supporting and stand alone.

It is to be borne in mind that in these Moffat Tunnel assessments it is the real estate and improvements that are assessed and not the personalty, and that it is the realty of the district that reaps the benefits of the tax when collected. Those who pay only a personal tax assist in creating the funds for the state and county treasury, and to take any part of such funds, as the treasurer would be called upon to do if required to collect these district taxes without reimbursement from the district for expenses, would be manifestly unfair to the taxpayer who would receive no benefit, and would violate the principles of natural justice; and according to the

true spirit of the law, the burden here must be borne by the recipient of the peculiar benefits.

■ From the record before us we do not know whether anticipated costs of collection of these taxes were included in the original levy or not. Such costs are a necessary part of the expense incident to the retirement of the original costs and interest, and could properly have been included in the original levy or with propriety added afterwards, or obtained by future or additional assessments, as may have to be done here. The items involved in this suit are substantially a part and parcel of the main project and figure into the costs thereof, and it is not a departure from the statute on the part of the board if they pay for such items from funds coming into their hands. The part of the act that gives foundation for the above conclusion follows:

■ Section 8. "(h) The board is hereby vested with all powers necessary and requisite for the accomplishment of the purposes for which this district is organized and capable of being delegated by the general assembly of the state of Colorado; and no enumeration of particular powers hereby granted shall be construed to impair any general grant of power herein contained, nor to limit any such grant to a power or powers of the same class or classes as those so enumerated."

In defining the authority of the board in this particular matter we are dealing with a statutory creature brought into existence for the purpose of constructing, paying for and maintaining the tunnel, and was provided with a definitely bounded district to draw from to accomplish that purpose and inferentially commanded to use its best judgment in such matters.

It has been judicially and finally determined that the Legislature delegated express powers to the board to do the things necessary and requisite for the accomplishment of the purposes for which the district was organized. *Boynton v. Moffat Tunnel Improvement Dist.*, 57 F. (2d) 772. Then it follows that the Legislature did

not intend to endow the board with power to assess and levy taxes and at the same time deprive it of the appropriate means of forcing the collection thereof and making reasonable expenditure therefor, and if the board has that power now, under the act, it had it at all times, and if it exercised such power, as it did apparently from the record, it was not outside the authority granted.

To sum up the construction of such parts of the act as have been drawn into this controversy, and to clear the doubt in the minds of those charged with its enforcement, we will say that it is the duty of the treasurer to cause to be collected these taxes and delinquencies in the manner prescribed by the act, at the reasonable actual cost thereof, without award or compensation to himself as such administrative agent, and to submit the items thereof to the board as they accrue for payment. It is the duty of the board to anticipate and provide for the payment of same promptly, and there is no authority given by the act for the advancement of such sums or any other money by the board to any person or persons not intrusted by the act with the keeping of its funds. Therefore, the trial court was in error in ordering the board to advance such sums as are needed to the treasurer, and that part of the judgment is reversed, and as to all other matters, the judgment is affirmed with direction to the lower court to modify its decree and judgment to conform to the directions herein set forth.

In comparing Exhibits A and B, we believe an error in calculation has been made and that the salary item in Exhibit A of $2,189.80 should, according to calculations made on Exhibit B, be $2,122.16, and if correct would reduce the amount of the judgment in the sum of $67.74 and that the judgment should be $2,960.81 instead of $3,028.55 if these calculations are correct, and the trial court is directed to modify the amount of its judgment to correct any error in calculations that may be found, and agreed upon as an error between the parties hereto.

Judgment affirmed in part and reversed in part with directions.

Mr. Justice Bouck specially concurs.

Mr. Justice Bouck, specially concurring.

In the judgment just rendered herein by this court I concur. My concurrence is not to be understood as approving certain expressions in Mr. Justice Holland's opinion which I think are not necessary to the decision of this case; hence the present concurring opinion.

The Moffat Tunnel Act (S. L. '22, c. 2, pp. 88-108 [C. L. '21, §§9590-9511]) created the Moffat Tunnel Improvement District as a separate municipal corporation, and established the Moffat Tunnel Commission as the managing and controlling agency of the district. The act also provided for the building up of the Moffat Tunnel Fund, granting to the commission plenary power to issue and sell millions of dollars' worth of district bonds and to levy upon the real estate within the district all necessary special assessments for the liquidation of such bonds and for the payment of any other legitimate expenses authorized by the act. Under the terms of the act no moneys are permitted to be paid out of the fund except upon vouchers issued by the commission and warrants drawn by its president. It is obvious that the commission is thus vested with grave responsibilities calling for the exercise of its sound discretion. Every claim against the district must in the first instance be presented to the commission, whose duty it is to consider it and allow it in whole or in part, or else disallow it, according to its honest judgment upon the evidence submitted. To such action there attaches the usual presumption of regularity which is indulged in favor of a duly established fact-finding body.

It is my belief that the proper remedy herein would have been mandamus, with a view to compelling the commission to act upon the claim, since it had failed to act

solely because it doubted its power to allow even a part of the claim involved here. However, not having objected on the ground of mistaken remedy, the district may be deemed to have waived the objection. The question then arises on the sum to be allowed in this particular case. Since the issue between district and county seems to have been an out-and-out issue whether the district has the right to allow anything at all out of the fund, and not as to the validity of any individual element of the particular claim, the lower court may well be considered entitled to allow all those elements as represented by the aggregate. This view would seem supported by the state of the record before us, which shows that in the present case no serious attempt was made to defeat any part of the claim whether because of the nature of any element thereof or the unreasonableness of any amount. The district introduced no evidence whatever to contradict the evidence introduced by Denver and its treasurer. I take it therefore that under the record the decision simply means that the commission possesses the legal authority to expend moneys from the fund for the purpose of paying such claims as it finds to be valid claims under the provisions of the act. The commission's failure to contest the concrete facts more strenuously makes the present result, of course, none the less a binding adjudication of the specific claim. On the other hand, the question, for instance, of what, if any, clerical services can ordinarily constitute proper charges against the fund does not seem to have been fully or finally argued. Such questions were evidently subordinated to the main issue as to the power of the commission to pay anything at all. The similarity of like questions in relation to irrigation districts, improvement districts, etc., was, it seems, not seriously considered. (See *Board of Co. Com'rs. of Otero Co. v. Otero Irrigation District,* 56 Colo. 515, 526, 527, 139 Pac. 546, 550.) The exact limits of the proposition that no Colorado officer can get compensation in the form of salary, fees, *costs,* or *expenses,* except

by express statutory authority, seem not to have been discussed. (*Leckenby v. Post Co.,* 65 Colo. 443, 445, 176 Pac. 490, 492.) The determination of what is a proper claim in a particular case may well be reserved until an actual controversy is before this court after pursuing the regular course of action before the commission. The duty of the commission to consider and pass upon claims has now been definitely established. I limit my concurrence to the allowance of the claim herein, as being the decision called for by the peculiar condition of the record itself. I believe that this court's decision ought to be considered as similarly limited.