## No. 14,322.

MOFFAT TUNNEL IMPROVEMENT DISTRICT *v.* McGUIRE,
MANAGER OF REVENUE.

(87 P. [2d] 753)

Decided February 6, 1939.   Rehearing denied March 6, 1939.

Mr. ERSKINE R. MYER, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. THOMAS H. GIBSON, for defendant in error.

*En Banc.*

Mr. Justice Francis E. Bouck delivered the opinion of the court.

The Moffat Tunnel Improvement District, plaintiff in error, sued the defendant in error McGuire as ex officio treasurer of the City and County of Denver for certain fees collected by him in connection with sales for Moffat tunnel assessments and redemptions from such sales. Judgment having gone against the district, the latter brings the case here for review.

It is conceded by both sides that the treasurer of every county wholly or partly within the district, including the City and County of Denver, is entitled to collect for his services in issuing each certificate of sale for delinquent tunnel assessments—as he is in the case of delinquent general taxes—the sum of fifty cents, together with five cents for each item of real property described therein as sold, and also like fees for issuing certificates of redemption. '35 C. S. A., c. 142, §§ 244, 271.

The district contends that the fees collected by the defendant in error for such certificates belong to it and not to him or to the City and County of Denver. In support of that contention is cited the case of *Moffat Tunnel Dist. v. Denver,* 93 Colo. 317, 25 P. (2d) 735. That, however, is not authority in the present instance. It dealt with such matters as the mechanics of preparing tunnel assessment rolls, of publishing lists of delinquent tunnel assessments, and of fixing liability for the incidental expense. This expense was held to be properly chargeable to the district. The subject of the treasurer's fees was left untouched by that decision.

It is elementary that a fee which is provided for a specified public service presumably becomes the property of the officer authorized to collect it, subject to the power of the proper public authority to limit the

amount retainable by the officer to a certain sum, the limitation usually being accomplished by establishing a maximum salary payable out of the fees he collects. Normally the surplus of all fees provided for a salaried county officer goes into the public treasury of the county.

In the governmental scheme of Colorado we are familiar with many instances where the officer of one governmental unit is, in virtue of such capacity, designated by the appropriate legislative authority as the person who is to perform services for an entirely different governmental unit or for the state as a whole. Examples of this process have long existed, county treasurers being constituted ex officio treasurers of irrigation districts, and, here, of the Moffat Tunnel Improvement District; and county clerks acting as collectors of fees for issuing fish and game licenses. Similarly, clerks of Colorado courts collect fees for their servces in naturalization proceedings. The officer in these circumstances gets his fees in the role of officer in the particular governmental unit which appointed or elected him, and accounts to that unit for those fees. He receives the fees for these additional services performed by him because, happening to hold the office, he has had duties imposed upon him for the benefit of another public unit which is not itself provided with a separate officer of kindred powers. Such a separate officer would usually involve a duplication of office and miscellaneous expenses inconsistent with the principle of true public economy—a constant legislative problem. When a taxpayer comes to the office of a county treasurer to pay his tunnel assessments, he gets not merely the personal services of the treasurer or his deputy, but the convenience supplied by the treasurer's county in the form of an accessible office and its accommodations, the cost of maintaining which is borne by the county. If it were necessary to find an equivalent value given by the county in exchange for the surplus fees turned over to the public treasury—which it is not— such value could easily consist of the increased expense

and complication caused by the additional services imposed upon the county's officer. We need not, however, search for this kind of justification. That is another problem with which the legislative authority must cope, and concerning which it may use its discretion. In the exercise of its plenary power the General Assembly, which made the county treasurer an ex officio treasurer of the Moffat Tunnel Improvement District, might of course have provided that surplus fees such as those in question here should go into the district treasury. It has not done so. In the absence of express statutory provision on the subject, the trial court was right in deciding as it did. The surplus fees are properly and lawfully placed in the public treasury of the particular county, which in the present instance is the treasury of the City and County of Denver.

Judgment affirmed.

MR. JUSTICE BOCK not participating.

MR. CHIEF JUSTICE HILLIARD dissents.

MR. CHIEF JUSTICE HILLIARD dissenting on rehearing.

I am now persuaded, although originally I thought otherwise, that the opinion here affirms a judgment that works a definite injustice. In *Moffat Tunnel Dist. v. Denver,* 93 Colo. 317, 25 P. (2d) 735, we required the tunnel district to reimburse Denver for all costs and expenses incurred by it in connection with the collection of Moffat Tunnel assessments. It is admitted that in this instance such costs and expenses, including the costs of the certificates of sale and redemption presently involved, were paid. I cannot subscribe to the judicial requirement that those items be discharged a second time, which I think is the effect of our present pronouncement.