## FETZER v. JOHNSON et al.

(Circuit Court of Appeals, Eighth Circuit. October 7, 1926.)

No. 7102.

**1. Drains ⬦14(2).**

Under Comp. Laws Okl. 1909, §§ 3045, 3057, as amended by Laws Okl. 1910, c. 79, original petition for establishment of drainage district need not describe lands to be benefited or affected, nor contain allegations from which acreage may be ascertained.

**2. Courts ⬦370.**

Where rights of litigant affected by state statute arose before statute was interpreted by state Supreme Court, federal court has duty to determine for itself meaning of such statute, notwithstanding construction by state court after accrual of rights involved.

**3. Statutes ⬦206.**

In construing statute, the whole must be considered, and all parts given their obviously intended meaning, and no parts stricken down, unless in irreconcilable conflict with remainder.

**4. Drains ⬦84.**

Decision of state court, destroying legal entity of drainage district, held not to nullify or affect lien of assessments previously made.

**5. Courts ⬦508(3)—Holder of bonds of drainage district held without adequate legal remedy, as affecting right to injunctive relief against enforcement of judgment of state court.**

Holder of bonds of drainage district, after decision of state Supreme Court destroying legal entity of district and enjoining collection of assessments made to pay bonds, held without a plain, adequate, and complete remedy at law as affecting his right to injunctive relief against enforcement of judgment of state court.

15 F.(2d)—10

**6. Courts ⬦508(3)—Holder of bonds of drainage district organized under state statute held entitled to injunction restraining enforcement of judgment of state court holding organization of district defective and assessments invalid (Comp. Laws Okl. 1909, §§ 3045–3057, as amended by Laws Okl. 1910, c. 79; Judicial Code, § 265 [U. S. Comp. St. § 1242]).**

Holder of bonds of drainage district, organized under Comp. Laws Okl. 1909, §§ 3045–3057, as amended by Laws Okl. 1910, c. 79, after decision of state Supreme Court declaring organization of district defective and assessments to pay bonds illegal, and ordering them canceled and vacated, for reason in which federal court did not concur, held entitled to injunction restraining enforcement of judgment of state court and compelling collection of assessments to pay bonds, and such relief does not contravene Judicial Code, § 265 (U. S. Comp. St. § 1242).

**7. Judgment ⬦707.**

Rights of holder of bonds of drainage district held not affected by judgment in suit to enjoin collection of assessment, to which he was not a party and of which he had no notice.

**8. Courts ⬦508(3).**

Federal court, notwithstanding Judicial Code, § 265 (Comp. St. § 1242), may by injunction deprive one of benefit of judgment obtained in state court, where its enforcement is contrary to equity and good conscience.

Appeal from the District Court of the United States for the Eastern District of Oklahoma.

Suit by William Fetzer against E. B. Johnson and others. From a decree dismissing his bill, plaintiff appeals. Reversed.

A. D. Stevens and Gray Herndon, both of Springfield, Ill., and J. B. Furry, of Muskogee, Okl., for appellant.

J. B. Dudley, of Oklahoma City, Okl., and Alger Melton, of Chickasha, Okl., for appellees.

Before LEWIS, Circuit Judge, and MUNGER and JOHNSON, District Judges.

LEWIS, Circuit Judge. In 1912 appellant, William Fetzer, a citizen and resident of Illinois, purchased and still owns nine negotiable coupon bonds of $1,000.00 each, payable to bearer, issued of date August 14, 1911, by Minco Drainage District No. 2, Grady county, Oklahoma. Each bond recites that it is one of a series of bonds issued for the purpose of paying the cost of a system of drainage known as Minco Drainage District No. 2 of said county, and in anticipation of the collection of the installments of a special assessment duly levied upon lands within said district and benefited by said improvement, in strict compliance with chap-

ter 30 of the Session Laws of Oklahoma for the years 1907–08, as amended, and pursuant to an order of the board of county commissioners of said Grady county duly made and entered of record; that the bond is payable solely out of the proceeds of the special assessment for the benefits heretofore legally levied on the lands to be benefited and out of no other fund whatsoever; that all acts, conditions and things required to be done in locating and establishing said drainage district and in making and levying said assessment against lands benefited thereby and in the authorization, execution and issuance of this bond were and have been legally had, done and performed; that the total amount of bonds issued on account of said drainage district does not exceed the assessment so levied therefor and unpaid at the time said bonds were issued, or any legal limitation thereof, and for the performance of all of the covenants and stipulations of this bond and of the duties imposed by law upon the county of Grady for the collection of the principal and interest of said assessment and the application thereof to the payment of this bond and the interest thereon, and for the levying of such other and further assessments as are authorized by law and may be required for the prompt payment of this bond and the interest thereon, the full faith, credit and resources of said county are hereby irrevocably pledged. Fetzer received interest semi-annually on his bonds, evidenced by coupons attached to them, until some time in 1915, when payments ceased and he brought this bill in equity on May 29, 1922, its purpose and the relief sought being hereinafter stated.

On November 12, 1915, E. B. Johnson, one of the appellees here, brought a suit in the state district court for Grady county against the treasurer of that county, whose duty it was to collect the assessments levied on lands in the drainage district and sell lands delinquent in payment of those assessments, to restrain him from further collection of assessments on Johnson's lands in the district and to enjoin him from selling Johnson's lands because of delinquencies. The gravamen of Johnson's complaint in his suit against the county treasurer was that the board of county commissioners, in organizing the district in the early part of 1911, acted without jurisdiction because the petition presented to that board on January 2, 1911, did not describe the lands to be benefited or affected by the proposed drain, and for that reason, and others which he stated, all of the proceedings before the board, in-

cluding the assessments made by it against his lands, were void. The county treasurer in his answer put in issue and resisted the claims of Johnson; but in December, 1916, that court entered a decree perpetually enjoining the treasurer from collecting any assessments on the lands of Johnson and adjudged that they were illegal and invalid and ordered that they be cancelled, vacated and set aside. An appeal was taken from that decree to the state Supreme Court and the decree affirmed on September 9, 1919, in Mulligan, County Treas., v. Johnson, 77 Okl. 68, 186 P. 242. The court said:

"The assessments enjoined in this proceeding were levied for the payment of bonds issued in behalf of a drainage district in Grady county. The drainage district was created under section 3046, Comp. Laws of 1909, and the decisive question is whether the commissioners had jurisdiction; the petition failing to describe the drainage district, so the aggregate acres might be ascertained from an examination of the petition."

The court relied on the case of Coyle v. Board of Commissioners of Kay County, 38 Okl. 370, 132 P. 1113, in holding that the petition filed under section 3046 must describe the district so the aggregate acres therein might be ascertained from it, and that a failure in that respect was fatally defective and the board of commissioners was without jurisdiction to proceed. It was also held that the court's ruling in Board of Commissioners of Rogers County v. Lipe, 45 Okl. 685, 146 P. 713, was not in point, because, it is said, the case arose under different statutes; but the only difference was an amendment (Laws Okl. 1910, c. 79) of section 3046 changing petitioners from a percentum of the owners to a specified number of owners. The Coyle Case, supra, was decided by the state Supreme Court on May 9, 1913, which, it will be observed, was after Fetzer purchased the district bonds. But before considering that case it will be necessary to give attention to the statute under which the district was organized. It is referred to in the briefs as sections 3045 to 3057, Snyder's Compiled Laws 1909 Oklahoma, some of them as amended by Oklahoma Laws 1910. We summarize them.

[1] Section 3045 grants to the commissioners of any county power, at any regular meeting thereof, to cause ditches, drains and nonnavigable water courses within the county to be constructed, straightened, widened, altered or deepened when the same shall be conducive to public health or where the same will be of public utility, or a benefit

to agricultural interests or to the soil of lands affected thereby, or when necessary to drain any lots, lands, or the soil thereof, and for that purpose to form one or more drain or improvement districts, and to designate each of said districts by name. It gives the commissioners exclusive jurisdiction to hear and determine all contests and objections to the creation of such district and of all matters pertaining to the same.

Section 3046 provides that before the commissioners shall establish any drain or improvement district there shall be filed with the county clerk of such county a petition signed either by 15 per cent. of the owners or by the resident owners of 15 per cent. of the aggregate acres of land to be benefited or affected by such drain or other improvements and to be assessed for construction thereof, "setting forth the necessity therefor with the general description of the proposed drain or other improvements, the starting point, route and terminus thereof, and whether it is desired to issue bonds and other evidence of indebtedness to meet the expense of such improvements; provided, that in the event it is found that the lands to be embraced within said drain or improvement district shall be benefited by such drainage or improvements as herein provided, and will benefit the public health, or will be of public utility and benefit, then the commissioners shall have power to order said improvements without additional petitions; otherwise it shall require the signatures either of fifty per centum of the owners or of the resident owners of fifty per centum of the aggregate acreage to be affected or benefited by such drain or improvements." It requires the petitioners to give a bond for the payment of costs.

Section 3047. Upon the filing of said petition and approval of the bond the commissioners are required to appoint three resident freeholders of the county not interested in the district and not of kin to any person interested therein, as viewers and shall direct the surveyor to assist the viewers so appointed, "who shall proceed at once under the direction and order of the commissioners made therein, certified by the county clerk, to view the line of proposed drain or improvement and report after actual view of the premises along and adjacent thereto, whether the proposed improvement is so practicable and necessary or of private or public utility and benefit; and if said viewers shall find that the proposed improvement is so practicable and necessary, or of utility and benefit, they shall so report and recommend the best

route for the proposed drain, whether any portion of the same should be covered or bridged, and whether the work of constructing the same should be by allotment to the several interests, or be let by contract without allotment; which report shall be made in writing, and shall be by order of the commissioners entered upon the records in the office of the county clerk."

Section 3048. After the report of the viewers is filed an order must be entered fixing the time for hearing the petition and report of the viewers and notice of said hearing must be given by publication for two weeks in some newspaper printed and of general circulation in the county, of the pendency of the petition, the appointment and report of viewers, the place of beginning, route and terminus of said proposed drain or improvement, and the time at which the petition and report made by the viewers will be heard. If the commissioners shall find against the improvement they shall dismiss the petition and proceedings at the cost of the petitioners.

Section 3049. Any person interested in land which will be affected by the proposed drain or improvement, may file in the office of the county clerk on or before the day set for the hearing of the report of the viewers a written remonstrance and objection against the same, "as located by the petition or report of the viewers, setting forth his grievance, which objection shall be by the commissioners heard and determined and filed with the petition. If the commissioners shall find in favor of making the improvements, the lands which, as hereinafter provided, may be found will be thereby benefited, shall, for the purpose of this article, constitute a drainage district, which shall be designated by name and number."

Section 3050. "If the commissioners shall find that the proposed drain or improvement is necessary for sanitary or agricultural purposes, or will be conducive to the public health or a public utility they shall cause to be entered upon the records such finding, and they shall so certify to the judge of the district court of such county, and request that he appoint three disinterested freeholders from the regular jury list of names prepared for the district court, who shall not be interested in the construction of said work and not of kin to any person interested therein, and thereupon the judge of the district court shall immediately cause ten days' notice to be given in some newspaper printed and of general circulation in the county, of the said application for appoint-

ment of viewers, and at the time stated therein shall appoint three such disinterested freeholders from the regular jury list of names of his court, and shall cause the names of such viewers so appointed to be certified to the board of county commissioners, and the said county commissioners shall thereupon cause an order to be entered on their records authorizing and directing the three viewers so appointed, and the county surveyor or any expert surveyor or engineer employed by them to go upon the line described in the order, and if only the general route has been located, to establish the precise location thereof, where in their judgment the proposed improvement will prove more efficient, to survey and level such described or established line, and set a stake at every one hundred feet, numbering down stream, mark the intersections and boundaries of lands, township, range county lines, bench-marks, and road and railroad crossings; to determine the dimensions and form of the proposed drain, levee or other improvement and what disposition shall be made of excavated earth; to establish the number of cubic yards of earth or other substance to be removed and the cost per cubic yard of each section of one hundred feet, and for the whole work, and to make report, profile, and plat of the same; together with a schedule of all lots and lands and of public and corporate roads and railroads, together with the names and residences of the owners, that will be benefited, damaged, or condemned by or for the improvements, and the damage or benefit to each tract of forty acres or less, and make separate estimate of the cost of the location and construction; and apportion the same to each tract in proportion to the benefits or damages that may result to each. If so ordered by the commissioners they shall also apportion and allot the construction or expense of same—of the number of lineal feet and cubic yards of said work—to each lot or tract of land, road, or railroad, in proportion to the estimate of benefits or damages as above described. They shall specify the manner and time in which the improvements shall be made and completed, the number of floodgates, waterways, farm crossings, bridges, and the dimensions thereof, and note the county and township lines and railroad crossings. The plat shall be drawn upon a scale sufficiently large to represent all the meanderings of said improvements, and shall distinctly show the boundary lines of each lot or tract of land, and each road or railroad to be benefited and taxed thereby, and the name of the

owner or owners of each tract of land and of any interest therein; so far as they are able to ascertain the same, the authority or company having in charge, owning or controlling each public or corporate road or railroad, the distance in feet through each tract or parcel of land, together with such other matters as the viewers or surveyors may deem material. Such profile shall show the surface, the grade line and grade, if any, fixed, and the viewers and surveyors shall make and file with the report an itemized bill of costs made in the discharge of their duties. Such report shall be made and filed in the office of the county clerk within thirty days after said survey and levees are completed."

Section 3051. This section is a continuation of the powers named to be exercised by the second set of viewers. They may in their discretion vary from the line described in the petition but must commence at the point described therein and follow down the line as nearly as practicable. If the drain described in the petition is not of sufficient length to drain the land adjacent thereto they may extend the drain below the outlet named in the petition as far as may be necessary, not exceeding one mile. As far as practicable they must locate the drain on division lines of owners and not lay it diagonally across the land. All persons whose lands may be affected by the drain may appear before the viewers and express their opinions on all matters pertaining thereto.

Section 3052. "Upon the filing of the report of the viewers the county clerk shall immediately set a hearing of the same for some day during the next regular meeting of the commissioners. He shall thereupon issue, in the name of the state, a notice, directed by name, to every person returned by the surveyor and viewers as the owner of every lot or parcel of land affected by the proposed improvement, or of any interest therein, and also by name, to all others whom it may in any manner be ascertained own such land or any part thereof, or any interest therein, and also generally to all other persons, without mentioning their names, who may own such land or any part thereof, or any interest therein, notifying them of the general object and nature of the petition and report of the surveyor and viewers, and that on the day so fixed the commissioners will hear said petition and report, and any evidence that may be adduced concerning the same, and requiring the person so named, and each of them, on the day fixed for hearing to appear before the commissioners and show cause, if

any they have, why said report should not be confirmed, as made, or as the same may by the commissioners be amended, and the improvements and assessments therein described or as the report may be amended, made. Such notice shall contain in appropriate columns a tabulated description, which may be abbreviated as land descriptions usually are abbreviated, of every lot or parcel of land that will be affected by the proposed improvements, and shall be published for four weeks in some newspaper printed and of general circulation in the county, the last insertion to be before the day set for the hearing."

Section 3053. This section provides that if the commissioners shall find that due notice has been given they must then examine the report of the surveyor and viewers, and if it appear that the assessments of the cost of location and construction, and of damages and benefits to each tract are correct, and if the apportionment of the cost of location and construction is in proportion to the benefits or damages to each tract fair and just, the same shall be approved and confirmed. If they shall find that the apportionments so reported are unjust or erroneous, they may by an order amend the report, upon evidence, so as to make the apportionments fair and just in proportion to the benefits or damages.

Section 3057. "Any person whose lands are affected by the proposed improvements may, on or before the day set for hearing before the commissioners, file exceptions to the apportionments made by, and the action of the viewers, upon any claim for compensation or damages. The commissioners may hear testimony and examine witnesses upon all questions made by such exceptions and for that purpose may compel the attendance of witnesses and the production of other evidence, and its decision upon each of the exceptions shall be entered of record." It gives any person aggrieved the right to appeal from the order of the commissioners. On such appeal the questions for determination are, first, whether just compensation has been allowed for property appropriated, and second, whether proper damages have been allowed for property, and third, whether the property for which an appeal is prayed has been assessed more than it will be benefited, or more than its proportionate share of the cost of the improvements. On allowance of the appeal the county clerk shall certify and transmit all original papers on file in the cause relating to the matters involved, to the district court.

The original petition filed on January 2, 1911, which initiated the proceeding, was signed by nine landowners of the district, one of them being a brother of E. B. Johnson. It recited that the proposed improvement "is necessary for the public health and is necessary to add to the fertility of the soil and make possible the cultivation of the land along and near the course of the ditch hereinafter described and petitioned for." It petitioned the board of county commissioners to establish the drainage district and that bonds be issued to meet the expense of such improvements and ditch, and that the ditch be made sufficiently wide and deep to carry off the surplus water from the land and watercourses "as may be ascertained by a survey thereof," and that said ditch commence at a point (naming it), thence in an easterly direction through section 36, township 10 N., range 8 W., and sections 31, 32, 33, 28, 27, 22, 23 and 14, township 10 N., range 7 W., Indian Meridian, more particularly described and designated by a plat attached to the petition and made a part of it. It did not describe the district so the aggregate acres therein might be ascertained from it. It did not describe the lands contained in the district, nor give the boundaries thereof.

Counsel for appellees does not contend that there was any other omission, irregularity or defect in the entire proceeding before the board of commissioners than the one on which the Supreme Court decided the case. And our examination of the record convinces us that the board adhered strictly to the requirements of the statute and that the original petition was signed by resident owners of fifteen per centum of the aggregate acres of land composing the district as established.

At the hearing on the petition and report of the first set of viewers the board found that "the proposed drain and improvement is necessary for sanitary and agricultural purposes and will be conducive to the public health and a public utility," and it ordered that a certified copy of its order be presented to the judge of the district court and that he be requested to appoint the second set of viewers. At the hearing on the report of the second set of viewers the board found that the required notice thereof had been given, that no protests or objections had been filed to that report, that the assessments of benefits to each forty-acre tract, as ascertained and recommended by the viewers, was just and equitable, and it ordered that said sums, specifying the amount as to each forty, be levied as assessments of benefits

thereon and placed on the assessment roll of said district for the construction of the improvements. By another order the board provided for the issuance and sale of the district's negotiable bonds to meet the cost of construction and divided the assessment levies into annual installments to be paid over a series of years as the bonds and interest thereon became due.

We come now to Coyle v. Board of Commissioners, supra. That suit was brought against the board by several landowners. One set of viewers, the opinion does not state which, were made defendants. It does not appear how far the board had progressed in organizing that district, but the court said the purpose of plaintiffs in that suit was to enjoin the defendants from making any further orders or taking any steps looking toward the annexation of plaintiffs' premises to said proposed drainage district, or other steps therein that might create a lien on the premises of plaintiffs. The opinion holds that the originating petition "evidently means the petition setting out a description of said land," and the reasons which the court assigns therefor is, first, under the proviso in section 3046 the board of commissioners is required on the report of the first set of viewers to find that the lands to be embraced within the district will be benefited, and it is said that the commissioners cannot make that finding without knowing what lands are to be embraced; and secondly, that the order of the board to the freeholders is to act as viewers, "not that they shall make examination and determine what land shall be included in the proposed district." But it is too obvious for argument that the second set of viewers is expressly charged with the duty under the statute to make examination and determination of what land shall be included in the proposed district. We have searched in vain to find in the statute any requirement that the originating petition should set out a description of the land in the district, or that it should describe the boundaries of the district, or that it should contain allegations from which the aggregate acres in the district might be ascertained. Section 3049 expressly provides that if the commissioners, at the preliminary hearing on the petition and report of the first viewers, shall find in favor of making the improvements, the lands which may be benefited shall be found "as hereinafter provided." And the very next section gives to the second set of viewers the authority, and imposes on them the duty to ascertain the lands and lots that will be benefited or dam-

aged and to file with their report a list thereof, and those lands, says the statute, shall constitute the district, subject to modification, by the board on the hearing. A plat of lands so found by the viewers is to be made and filed with their report. Plainly, this plat and said list of lands exhibit the proposed district, and until filed by the viewers and surveyor no one could know what lands might be within the district.

The opinion in the Coyle Case does not support the conclusion in Mulligan v. Johnson in another respect. It does not hold that the failure of the petition to describe the drainage district so the aggregate acres might be ascertained therefrom was fatal to the jurisdiction of the board. The court went no further in the Coyle Case than to say: "It follows that the defendants were without jurisdiction in so far as the lands of said plaintiffs were concerned"; and it remanded the cause with instructions to the trial court to proceed in accordance with the opinion. In Board v. Lipe, supra, opinion rendered February 23, 1915, the court repudiated the idea that the originating petition should disclose the aggregate acreage to be included in the district, or fix boundaries thereof, or describe the lands to be included. It said, as we have just said, that that was a duty imposed upon the second set of viewers, and that following the provisions of the statute there was no way to ascertain the acreage, or the aggregate thereof, until the second set of viewers had made their report and the board had taken action thereon. This statute seems almost a literal copy of the Missouri statute, with which the Supreme Court of that state dealt in State ex rel. v. Taylor, 224 Mo. 393, 123 S. W. 892, opinion rendered December 21, 1909. Under that statute two sets of viewers were provided for and each was required to discharge the same duties that the two sets of viewers were required to discharge by the Oklahoma statute. There, as here, the proceeding for the establishment of the district was to be initiated by petition signed by landowners. It required, as here, that the petition set forth the necessity for the improvement and give a general description of the proposed ditch or drain, starting point, route and terminus. It was objected that the petition in that case did not describe the land in the proposed district. The court said:

"The sufficiency of the petition is next assailed because it did not contain a description of the lands to be embraced in the proposed district. It is a sufficient answer to that objection to state that the statute makes

no such requirement. That and kindred matters are governed by other sections of the statutes, and by later proceedings to be had in the case."

On report of the first set of viewers and before action thereon by the county court, which exercised the same powers in the proceeding as the board of commissioners exercise under the Oklahoma statute, published notice thereof was required. That notice was objected to as insufficient to vest jurisdiction in the county court because it did not give the names of property owners, did not outline the district and did not describe the lands. Responding to this objection the court said:

"No district had then been organized, nor had there been any attempt to do so, and for that reason the notice could not state what lands or the names of the owners who would be actually embraced in the proposed district. Those matters could only be determined after the viewers had inspected the lands, made surveys and plats thereof, and reported the same to the court for its approval or disapproval."

See, also, Zinser v. Board, 137 Iowa, 660, 114 N. W. 51, State ex rel. v. Board, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161, Barnes v. Missouri Valley Constr. Co., 257 Mo. 175, 165 S. W. 723, Ann. Cas. 1915C, 34, and State ex rel. v. Blair, 245 Mo. 680, 151 S. W. 148.

[2, 3] There had been no interpretation of the Oklahoma statute by the Supreme Court of that state until after Fetzer purchased his bonds; and under those conditions it is the duty of this court to determine for itself the meaning of the statute. The three cases cited from that court, and we think there are no others, are in conflict on the point. If they were in harmony we would be inclined under the rules of comity, and it would be our personal inclination, to accept the interpretation given by that court, unless we were in grave doubt as to its soundness; but we are clearly of the opinion that it was not necessary under the statute for the petition to contain a description of the acreage, or the lands to be included in the district, or allegations from which the acreage therein might be ascertained. The statute (section 3046) prescribes what the petition shall contain. It does not require a description of land or acreage. Indeed, it would be impossible to so frame the petition if the later sections of the statute are to be complied with and given any effect. The whole statute must be considered and all of its parts given their obviously intended meaning and purpose.

No part should be stricken down unless it be in irreconcilable conflict with the remainder. The principle to be applied to the situation we have here is stated in Burgess v. Seligman, 107 U. S. 20, 33, 2 S. Ct. 10, 21 (27 L. Ed. 359):

"So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt. * * * As, however, the very object of giving to the national courts jurisdiction to administer the laws of the states in controversies between citizens of different states was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication."

See also Carroll County v. Smith, 111 U. S. 556, 4 S. Ct. 539, 28 L. Ed. 517; Anderson v. Santa Anna, 116 U. S. 356, 6 S. Ct. 413, 29 L. Ed. 633; Folsom v. Ninety Six, 159 U. S. 611, 16 S. Ct. 174, 40 L. Ed. 278; Great Southern Fire Proof Hotel Co. v. Jones, 193 U. S. 532, 24 S. Ct. 576, 48 L. Ed. 778.

Fetzer made E. B. Johnson, L. A. Sanders, county treasurer of Grady county, and Maxwell Investment Company, a corporation, defendants in this suit. As to the Investment Company, it is charged that by some transfer or assignment of the lands of Johnson, or a part thereof, made to the Investment Company, it claims a lien thereon to secure the payment of certain debts of Johnson. It is alleged that that lien, if any, is inferior to and subject to all the rights of complainant. The bill sets forth in detail the proceedings before the board of county commissioners in the establishment of the district, beginning with the filing of the original petition on January 2, 1911. It attaches as exhibits the reports of both sets of viewers, notices that were issued from time to time as the proceedings progressed and as required by the statute, and the orders of the board therein. It is alleged that complainant has no adequate remedy at law, that

because of the decree procured by Johnson in the state court and the use which he has made and will continue to make of it, complainant is about to be deprived of his property without due process; and it is prayed that a writ of injunction issue perpetually enjoining and restraining E. B. Johnson and Maxwell Investment Co. from asserting or in any manner enforcing or attempting to enforce the judgment and decree of the district and Supreme Courts of the state of Oklahoma in the case of Johnson v. H. N. Mulligan, county treasurer of said county, that L. A. Sanders, county treasurer, and his successors in office be perpetually enjoined and restrained from refusing to perform in full his and their legal duties in the matter of the collection of said assessments and the payment of the amount due on complainant's bonds and from failing or refusing to take such action and institute such proceedings as the law provides for compelling the payment of said assessments, and for other equitable relief that may seem proper. After answer the court on final hearing dismissed the bill, and Fetzer has brought the suit here on appeal.

[4, 5] Section 3057 requires the board of county commissioners to appoint a drainage commissioner for the district, who shall from time to time inspect the drains and improvements with a view of keeping them in repair and cleaned out. All suits brought for or against the district shall be in his name and under his direction. He appears to be the only person named in the statute to represent the district. It has no officers, none are provided for. The bonds of the district were to be and were executed in its behalf under order of the board by the chairman of the board of county commissioners, and countersigned and registered by the county clerk. The effect of the ruling of the state Supreme Court in the suit brought by Johnson was to destroy the district organization and dispense with its only representative, the drainage commissioner. No way has been shown by which Fetzer might sue the district and obtain service on it. The lands benefited were assessed their proportionate part of the cost of the improvements when the district was organized; and if Fetzer is entitled to have his bonds paid out of those assessments there is nothing to be done except the collection of the annual installments, into which the assessments were divided, by the county treasurer in the way that other assessments and taxes are paid and collected and the application of those collections to the payment of Fetzer's bonds

and the interest thereon. That procedure, if it can be enforced, is a more full, complete and speedy remedy than an action at law by Fetzer against the district, even if it might be served with process. Indeed, the opinion of the Supreme Court in Johnson's Case seems to have destroyed the district as a legal entity. But that did not nullify or affect the lien of the assessments. Graham v. Folsom, 200 U. S. 248, 26 S. Ct. 245, 50 L. Ed. 464. It does not appear that Fetzer has a plain, adequate and complete remedy at law by which his rights can be fully vindicated and protected.

[6] The question is whether a court of equity will permit Johnson to use his decree as a shield of defense against the enforcement of Fetzer's rights. A court of law could not grant relief of that kind. Some of the other landowners paid their assessments of benefits in full before the bonds were issued, and the balance needed to pay for the improvements was raised by the issuance and sale of the district's bonds. Their proceeds went to pay for improvements of Johnson's lands, not only the lands he owned when the district was created but other lands in the district which he bought after the improvements were made; and from the assessments on all of which he sought relief in the state court. A more inequitable attitude than that taken by Johnson can hardly be conceived. He asks that a court of conscience stay its hand and refuse relief while he will enrich himself at the expense of Fetzer. The bill and the relief which it seeks do not contravene section 265 of the Judicial Code (Comp. St. § 1242); for, as held in Simon v. Railway Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492, Public Service Co. v. Corboy, 250 U. S. 153, 39 S. Ct. 440, 63 L. Ed. 905, and Essanay Film Mfg. Co. v. Kane, 258 U. S. 358, 42 S. Ct. 318, 66 L. Ed. 658, the prohibition of that section does not apply "when the litigation has ended and a final judgment has been obtained—and when the plaintiff endeavors to use such judgment—a new state of facts, not within the language of the statute, may arise."

[7, 8] The facts which we are called on to consider were not before the state court in Johnson's suit. Fetzer was not a party to that suit. He did not know of it until after it was finally decided, and his rights were not, and could not be, considered or adjudicated in that case. Nor has that court decided that a court of equity should not restrain Johnson from using the judgment in that case as a defense and obstruction to equitable relief in a suit such as we have

here. The rights of parties can be determined only by the facts and circumstances in each case, and to deny Fetzer the relief which he seeks would be nothing less than our approval of a legal fraud against his rights. The proceeds of the bonds which he purchased in good faith for full value have been applied to the improvement of Johnson's land and the lands of others, and Johnson asks that Fetzer be given no relief against him, because of his judgment in the state court. A federal court of equity will, by its writ of injunction, deprive one "of the benefit of a judgment obtained in a state court in circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience." Wells Fargo & Co. v. Taylor, 254 U. S. 175, 183, 41 S. Ct. 93, 96 (65 L. Ed. 205).

We think the facts of this case bring it within the principle stated, and that complainant was entitled to the decree prayed for, to be enforced and executed by writs of injunction—mandatory against the county treasurer and his successors in office, and prohibitive against Johnson, his agents, attorneys and representatives. The decree appealed from is reversed and the District Court may vacate it and enter a decree for complainant below as prayed for in his bill. The costs on appeal will be taxed against appellee Johnson.

It is so ordered.