**BROWN–CRUMMER INV. CO. v. PAULTER**
**et al.**
No. 902.

Circuit Court of Appeals, Tenth Circuit.
March 21, 1934.

Valjean Biddison, of Tulsa, Okl. (Thomas E. Elcock and James G. Martin, both of Wichita, Kan., Biddison, Campbell, Biddison & Cantrell, of Tulsa, Okl., and Elcock & Martin, of Wichita, Kan., on the brief), for appellant.

John R. Woodard and Francis V. Westhafer, both of Tulsa, Okl., for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Appellant brought this bill in equity against the Town of Bixby, its officials, and certain taxpayers, to enforce its rights in street improvement bonds, of a face value of $12,277.99, which matured August 25, 1930, and are unpaid. A decree was rendered against the town for the amount of such bonds and interest payable only out of the special fund created by the statute. No appeal from that decree has been taken.

Incidental to the primary relief sought, appellant alleged that appellees herein owned property subject to the lien of its bonds; that such liens had not been discharged because the statutory penalties for delinquent payments had not been paid; that nevertheless, the public records erroneously disclosed that the liens were dis-

charged, and that appellees were about to sell their properties to innocent purchasers who would rely upon the records; injunctive relief, appropriate in the premises, was sought. After issues joined, and a trial, the bill was dismissed as to appellees.

These bonds were issued in 1920 under a statute which provided that they should be payable only "from the assessments which have been levied upon the lots and tracts of land benefited by said improvement, and from the accumulation of the surplus interest and penalties herein provided for." C. O. S. 1921, § 4614. The statute provides for assessments against the properties improved, for their payment in annual installments, and that "In case any installment and interest is not paid when due, the installment so matured and unpaid, and the unpaid interest thereon, shall draw interest at the rate of 18% per annum from maturity until paid." C. O. S. 1921, § 4607. Similar provisions are carried over into the bonds. Neither the statute nor the bond creates any personal liability against the property owner, and the bonds provide that they "shall not in any event become a liability of said town." Section 4615 creates a special fund made up of these installments and interest "together with the penalty collected on the delinquent installments," and provides that such fund shall "be applied to the payment of the outstanding bonds and the interest thereon," the surplus, if any, to be turned into the general revenue fund of the city. Section 4616 provides that whenever a surplus of $5000 has accumulated in the city treasury from the collection of the installments, interest and "penalty hereinbefore mentioned," it shall be used to retire outstanding bonds on call, in the order of their serial numbers, interest on those called to cease after the callable date. The bonds themselves contain this callable feature.

That the bondholders have a vested right in this special fund is not and cannot be questioned. It is the only source from which their bonds may be paid. The penalties for delinquencies are an integral part of the fund and the obligation, made so by statute. Where the assessments are substantially equal to the bonds issued, the chance of the higher-numbered bonds being paid is wrapped up largely in the penalties for delinquencies. It is a matter of common knowledge that paving is put down in front of vacant property of little value, and that much of this class is not worth accumulated taxes and assessments. This deficit is made

up, if at all, from penalties assessed against improved properties of substantial value. The legislature itself is powerless so to amend a statute as to deprive bondholders of their security. Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L. Ed. 403, cited with approval by Chief Justice Hughes in Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413; Moore v. Otis (C. C. A. 8) 275 F. 747. The Supreme Court of Oklahoma, in a case squarely in point, has adhered to this rule of common honesty. Nelson v. Pitts, 126 Okl. 191, 259 P. 533, 53 A. L. R. 1137. Cf. Fetzer v. Johnson (C. C. A. 8) 15 F.(2d) 145, certiorari denied 273 U. S. 751, 47 S. Ct. 455, 71 L. Ed. 873; Brown-Crummer Inv. Co. v. Miami (D. C. Okl.) 40 F.(2d) 508.

In 1922 the validity of this issue of bonds was drawn into litigation, culminating in 1926 in a decision by the Supreme Court of Oklahoma, sustaining them. Bocox v. Town of Bixby, 114 Okl. 269, 247 P. 20. Notwithstanding that the trial court in that case had sustained the bonds, appellees did not pay their assessments pending the appeal to the Supreme Court, and by 1926, the assessments against their properties were delinquent for the four preceding years. The penalties were burdensome, so in 1928 the Trustees of the Town obligingly passed a resolution, amendatory of the state statutes and of the bonds of appellant, remitting the penalties and directing the County Treasurer to accept payment of the principal of the assessments with seven per cent interest and upon payment of such lesser sums to discharge the liens of record.

The County Treasurer refused to accept from Paulter, one of the appellees herein, the sum of $2,469.55 in full payment of the assessments against his property, because such amount did not include the statutory penalties of $1,895.12, for the reason that he did not believe the Town Trustees could amend the statutes of the state or impair the obligation of appellant's contracts. Paulter brought mandamus against him in the state court which eventuated in a writ commanding him to accept the principal and interest, without the statutory penalties, from all taxpayers, to issue receipts in full therefor, and to cause the public records to show that the liens were discharged against the properties. The theory of plaintiff in that suit, and the state court, was that "the penalties * * * belong to the Town of Bixby, and that the Town of Bixby has the right to remit and cancel such penalties." Apparent-

ly section 4615, C. O. S. 1921, which provides that the penalties shall be applied to the payment of the bonds, and only the surplus remaining after the bonds are paid shall go to, the city, was overlooked. Judge Kennamer, in Brown-Crummer Inv. Co. v. Miami (D. C.) 40 F.(2d) 508, demonstrates the fallacy of this theory.

Appellant herein advised with the County Treasurer in that litigation in advance of trial, participated in the argument as amicus curiæ, and advised an appeal which was not taken. Appellant was not a party to the litigation, had no control over it, and is not bound by the judgment. City of Shidler v. H. C. Speer & Sons Co. (C. C. A. 10) 62 F.(2d) 544, 548, and cases there cited; Pendleton v. Russell, 144 U. S. 640, 12 S. Ct. 743, 36 L. Ed. 574; Chase Nat. Bank v. City of Norwalk, Ohio, 54 S. Ct. 475, 78 L. Ed. ——.

The resolution of the Town Trustees is a nullity; the writ of mandamus should not have issued and binds no one except the parties to the action. Even if the Town Trustees were authorized to amend the statutes of the state, they could not do what the legislature itself could not do, deprive the bondholders of their security after the bonds were sold and the streets improved with the proceeds. The futility of this effort to evade a just obligation is demonstrated by the circumstance that not a word is said by appellees in defense of the resolution or of the decision of the court in the mandamus action.

The County Treasurer, bound by the writ, accepted the amounts tendered and gave appellees receipts in full and discharged the liens of record. The taxpayers testified they paid these amounts in reliance. upon the decision in the mandamus action, believing that by thus paying part of what was due, the entire obligation would be discharged. The court below found, upon somewhat unsatisfactory proof, that appellees, while willing to pay $12,283.65 to save their properties, would have let them go to tax sale rather than pay the other $7,456.79. The sums paid were remitted, together with collections from other taxpayers, by the County Treasurer to the City Treasurer, and were applied to the discharge of bonds of lower serial numbers as required by the statute and the bonds. Appellant, owning the lower-numbered bonds, accepted payment in accord with the tenor of the bonds.

Neither appellees nor the trial court denies that the bondholders had a vested right to the statutory penalties up to the moment when the state court mandamused the County Treasurer. Appellees rather apologetically contend that the bondholders are bound by that writ. They were not parties and were not bound. Appellees vigorously insist, and the lower court held, that the bondholders lost their security, and must contribute $12,277.99 toward improving appellees' properties, by a species of equitable estoppel.

We see no need to probe deeply into the elusive doctrine of equitable estoppel. In its broadest phase, the one estopped must have done something he should not have done, or failed to do something he should have done, upon which the one invoking the doctrine relied to his prejudice.

What did appellant do or fail to do in this case? It appeared amicus curiæ and presented a sound proposition of law to a court of justice. There is no wrong in that. When the statutory amount had accumulated in the special fund, it accepted payment of the lower-numbered bonds, in strict accordance with the statute and its contract. There is no wrong in that. It is said it failed to warn appellees that if they paid part of what they owed, they might later be sued on unpaid bonds. Appellant was not required to advise appellees that a lien could not be discharged by a partial payment; nor does the law impose any duty upon a creditor to warn a debtor that if he makes but a partial payment, he may be sued for the balance; nor is restitution of the partial payment a condition precedent to a suit for the balance due. Besides, the appearance in the state court was a warning that the bondholders asserted their rights to the full payment of the penalties.

Nor did appellees rely upon any act of appellant to their prejudice. Appellees made their payments before appellant accepted payment of its bonds. Appellees paid part of what they owed, instead of letting their properties go for taxes, in reliance upon the decision of the state district court. Passing the point that appellant employed counsel to prevent that decision, appellant, not being a party to that litigation, is not bound by the decision directly or indirectly. Fetzer v. Johnson (C. C. A. 8) 15 F.(2d) 145, certiorari denied 273 U. S. 751, 47 S. Ct. 455, 71 L. Ed. 873; Powell v. City of Ada, Okl. (C. C. A. 10) 61 F.(2d) 283; Boynton v. Moffat Tunnel Improvement Dist. (C. C. A. 10) 57 F.(2d) 772, certiorari denied 287 U. S. 620, 53 S. Ct. 20, 77 L. Ed. 538; Board of Education of Town of Car-

men, Okl., v. James (C. C. A. 10) 49 F.(2d) 91; Bristow Battery Co. v. Board of Com'rs (C. C. A. 10) 37 F.(2d) 504, certiorari denied 282 U. S. 843, 51 S. Ct. 23, 75 L. Ed. 748; St. Louis-San Francisco Ry. Co. v. Blake (C. C. A. 10) 36 F.(2d) 652. Appellees' reliance could only have been upon the prospect that another court, with jurisdiction over the bondholders, would follow the decision of the state district court—a prospect that has failed to materialize. Appellees are in a pit of their own digging.

Appellees then invoke the established doctrine that one who accepts the fruits of a judgment, or takes under a will, is precluded from thereafter challenging the judgment or contesting the will.[1] But appellant took nothing under the writ of mandamus issued to the County Treasurer. All it did was to accept payment for 97 bonds, of a face value of about $48,000, from the City Treasurer; of that sum, appellees had paid the County Treasurer $12,283.65. Appellant took under the statute and its contract, and not under the writ of mandamus.

The order dismissing the bill is therefore reversed, with directions to grant the relief therein prayed.

Reversed.

---

[1] Hensley v. Rich, 191 Ind. 294, 132 N. E. 632, 18 A. L. R. 1118; Milan Bank v. Richmond, 280 Mo. 30, 217 S. W. 74, 9 A. L. R. 353; First State Bank of Strasburg v. Schmaltz, 61 N. D. 150, 237 N. W. 644; Scheper v. Scheper, 125 S. C. 89, 118 S. E. 178; Utermehle v. Norment, 197 U. S. 40, 25 S. Ct. 291, 49 L. Ed. 655, 3 Ann. Cas. 520; Safe Deposit & Trust Co. v. Hanna, 159 Md. 452, 150 A. 870; Medill v. Snyder, 61 Kan. 15, 58 P. 962, 78 Am. St. Rep. 307; West v. West, 131 Miss. 880, 95 So. 739, 29 A. L. R. 226; Kasey v. Fidelity Trust Co., 131 Ky. 604, 115 S. W. 737; Schmidt v. Johnston, 154 Md. 125, 140 A. 87.

But see Barber Asphalt Paving Co. v. City of Des Moines, 191 Iowa, 762, 183 N. W. 456; Oram v. City of New Brunswick, 64 N. J. Law, 19, 44 A. 883; United Boxboard & Paper Co. v. McEwan (N. J. Ch.) 76 A. 550; City of Seattle v. Liberman, 9 Wash. 276, 37 P. 433; Chicago, M. & St. P. R. Co. v. Kelm, 121 Minn. 343, 141 N. W. 295, 44 L. R. A. (N. S.) 995.