Guillermo Gallego MUNOZ; Humberto Martinez; Lic. Juan de Leon, Plaintiffs,

v.

COUNTY OF IMPERIAL; Superior Court of the State of California, in and for the County of Imperial; James Harmon; Luis Legaspi; John Kennerson; James Bucher; Tunney Williams; Herman M. Sperber; J. Leonard Speer; Donald Courtney McDougal, Defendants.

Civ. No. 77–491–T.

United States District Court, S. D. California.

March 26, 1981.

William H. Kronberger, Jr., San Diego, Cal., for plaintiffs.

Donald C. McDougal, Jr., San Diego, Cal., for defendant Donald Courtney McDougal.

James H. Harmon, County Counsel, El Centro, Cal., David L. Mulliken and Hayden J. Trubitt, Latham & Watkins, San Diego, Cal., for remaining defendants.

## MEMORANDUM OPINION AND ORDER

TURRENTINE, District Judge.

This case has wound its way up to the Supreme Court and back down again. *County of Imperial v. Munoz,* —— U.S. ——, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980), *vacating* 604 F.2d 1174 (9th Cir. 1979). The Ninth Circuit has remanded the case to this court for proceedings in accordance with the Supreme Court's decision. *Munoz v. County of Imperial,* 636 F.2d 1189 (9th Cir. 1981).

Briefly by way of background,[1] in a separate state court action the County of Imperial successfully enjoined Donald C. McDougal from selling well water for use outside the County, as dictated by his conditional use permit. *County of Imperial v. McDougal,* 19 Cal.3d 505, 564 P.2d 14, 138 Cal.Rptr. 472, *appeal dismissed* (for want of substantial federal question), 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 306 (1977). Present plaintiff Munoz participated as an *amicus curiae* before the California Supreme Court. Munoz has a contract with McDougal to act as his broker in arranging sales of water to Mexico, and plaintiffs Martinez and de Leon had also purchased water for use in Mexico. The state injunction forced McDougal to halt sales to plaintiffs. The instant federal action was then brought by plaintiffs, seeking to enjoin the County from enforcing the use permit restriction, and arguing the permit terms violated the Commerce Clause, Art. I, § 8, cl. 3. By order dated August 29, 1977, (attached as Appendix) this court granted plaintiffs a preliminary injunction, which was affirmed by the Ninth Circuit[2] and vacated by the Supreme Court.[3]

The fundamental issue on appeal was whether the Anti-Injunction Act, 28 U.S.C. § 2283, barred this court from issuing the preliminary injunction. Under *Hale v. Bimco Trading, Inc.,* 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771 (1939), this court has jurisdiction to issue an injunction in this situation only if plaintiffs were "strangers to the state court proceeding." *See County of Imperial,* —— U.S. at ——, 101 S.Ct. at 293. The Supreme Court remanded the case because it felt that neither this court nor the court of appeals had addressed the question whether plaintiffs were "strangers" to the state action.[4] *Id.*[5]

Both this court and the court of appeals have referred to *Hale* as a case which exempts "third parties" from coverage by the Anti-Injunction Act in a federal lawsuit subsequent to a state suit. *See* 604 F.2d at 1176; Appendix. Apparently the purpose of remand is to determine whether our characterization of plaintiffs as "third parties" is equivalent to the term "strangers" as used in *Hale.*[6]

---

1. The facts are more completely outlined in the Supreme Court's opinion, —— U.S. at ——, 101 S.Ct. at 291–92, and in this court's prior order (see Appendix).

2. 604 F.2d 1174 (9th Cir. 1979).

3. —— U.S. ——, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980).

4. The County has presented elaborate arguments attempting to show that the Anti-Injunction Act bars an injunction, and that even if the court does have jurisdiction the equities weigh against issuing an injunction. The court addressed virtually all of these arguments in its prior order (see Appendix), and the County has presented no new facts which might alter the court's conclusions. Neither the Supreme Court nor the court of appeals cast doubt upon any aspect of this case other than the "strangers" issue, and it was for the limited purpose

of addressing this issue that the case was remanded.

5. Three members of the Court felt that plaintiffs had already been determined to be "strangers" by the lower courts. —— U.S. at ——, 101 S.Ct. at 293-94 (Blackmun, J., concurring; Brennan and Stevens, JJ., dissenting).

6. In answer to the dissent's argument that the lower courts had already found plaintiffs to be "strangers," the Supreme Court majority stated that since the *court of appeals* had refrained from explicitly deciding whether there was privity, it followed that the *court of appeals* had not decided the "stranger" issue. —— U.S. at ——, 101 S.Ct. at 293 n.3. The majority did not explain why it felt that this court, which did find a lack of privity (see Appendix), had not reached the "stranger" question. *Cf.* —— U.S. at ——, 101 S.Ct. at 294 n.3 (Brennan, J., dissenting).

■ The dictionary defines "strangers" as, "all other persons in the world, except only the parties and privies. In its general legal signification the term is opposed to the word 'privy.'" Black's Law Dictionary 1590 (4th Ed. 1951). There is general agreement that the only persons bound by a judgment are those who were parties or privies to the prior action. *See* 1B Moore's Federal Practice ¶ 0.411[1], at 1251 (2d ed. 1980). The *Hale* Court in essence described a "stranger" as an independent suitor in federal court who would not be bound as though he were a party to the state litigation. *See Hale,* 306 U.S. at 377–78, 59 S.Ct. at 527. Thus, the definitions indicate that "strangers" (i. e., those not bound) are persons who are not parties or privies. Confirmation that this is the meaning intended by the *Hale* Court is found in *Chase National Bank v. Norwalk,* 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894 (1934), which the *Hale* Court cited in its discussion of "strangers." *Chase* interchangeably uses the term "stranger" with "a person not a privy." *Id.* at 441, 54 S.Ct. at 479. This court concludes that a "stranger," within the meaning of *Hale,* is one who was not a party or privy to the state court action.

■ It is undisputed that plaintiffs were not named parties to the state litigation. Munoz did file an *amicus* brief with the California Supreme Court,[7] but an *amicus curiae* does not have the status of a party, and is not bound in any way by the judgment. 1B Moore's Federal Practice ¶ 0.411[6], at 1551 (2d ed. 1980); *Brown-Crummer Investment Co. v. Paulter,* 70 F.2d 184, 186 (10th Cir. 1934). This court thoroughly examined the privity question in its August 29, 1977, preliminary injunction order, in connection with a discussion of res judicata. The court ruled that plaintiffs were not in privity with McDougal because they had no property interest in McDougal's land or use permit (see Appendix). No reason has been shown to disturb this finding. The conclusion reached is that plaintiffs were not parties or privies.

The County argues that even if plaintiffs were not parties or privies, they should be classified "non-strangers." Apparently the County asserts that plaintiffs are "almost" in privity with McDougal, and that persons almost in privity should not be considered "strangers." The County cites no authority for their vaguely defined "non-stranger" category, but it seems akin to what Professor Moore terms "participating non-parties." *See* 1B Moore's Federal Practice ¶ 0.411[6] (2d ed. 1980). These are persons whose extensive involvement behind the scenes of a case, generally controlling the course of litigation, causes them to be bound by the judgment. *Id. See also Simon v. Maryland Casualty Co.,* 353 F.2d 608, 612 (5th Cir. 1965). Nothing in the record supports a conclusion that plaintiffs were "participating non-parties" controlling McDougal's actions in the state case. McDougal was not merely a nominal defendant in the state action, rather he had substantial and distinct[8] personal rights at stake and cannot be characterized as having defended "in the name of" the present plaintiffs. *See Souffront v. Compagnie des Sucreries,* 217 U.S. 475, 486–87, 30 S.Ct. 608, 612, 54 L.Ed. 846 (1910); 1B Moore's Federal Practice ¶ 0.411[6] (2d ed. 1980). Therefore, assuming that "participating non-parties" are not considered to be privies,[9] the

---

7. Plaintiffs Martinez and de Leon were not *amicus curiae,* and nothing in the record suggests that they participated in any manner in the state proceedings.

8. In the state case, the court held that McDougal was deemed to have waived any objection to the constitutional validity of the conditional use permit. *County of Imperial v. McDougal,* 19 Cal.3d at 510–11, 564 P.2d 14, 138 Cal.Rptr. 472, *appeal dismissed* (for want of substantial federal question), 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 306 (1977). His standing to object to

the permit constraint was based upon, and limited by, his ownership of the land with which the permit ran. *Id.* The instant plaintiffs, in contrast, are asserting Commerce Clause rights not dependent on land or permit ownership. McDougal's legal rights differed sharply from those of the present plaintiffs.

9. The extensive ties and involvement between parties and "participating non-parties" suggests their relationship may be akin to privity. *See* 1B Moore's Federal Practice ¶ 0.411[6], at 1553 (2d ed. 1980).

plaintiffs here have not been shown to have participated in the state case to a degree requiring that they be bound by the judgment.

In summary, since plaintiffs were not parties or privies to the state court action, they are "strangers" within the meaning of *Hale*. Therefore, the Anti-Injunction Act is inapplicable and this court has the power and authority to issue an injunction. For the reasons stated and upon the terms described in the court's order dated August 29, 1977, (see Appendix), a preliminary injunction shall again issue restraining the County supervisors and their agents from enforcing the restriction in the use permit that prohibits sale of water for use outside Imperial County.

SO ORDERED.

## APPENDIX

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

#### August 29, 1977

The plaintiffs' motion for a preliminary injunction was heard on August 8, 1977. The plaintiffs appeared by Murry Luftig, Esq., and William Kronberger, Esq. Donald McDougal, Jr., Esq., appeared for defendant McDougal and James Harmon, Esq., appeared for the County of Imperial and for the other defendants. For the reasons and upon the conditions set forth below, the court grants the motion.

#### *Facts*

In 1967, one Simpson purchased a certain tract of land located in Imperial County and erected thereon a well. He applied for a use permit which would authorize the commercial sale of water from the well and the permit was granted with this condition: "[t]he water will be sold only for use within the Imperial County." Following the grant of the permit, Simpson sold water on a very small scale. Then in 1970 the land was zoned Open Space (S), requiring a conditional use permit for development of natural resources for commercial purposes.

In June, 1972, defendant McDougal bought the land from Simpson and soon the neighbors began to complain about increased operation of the well. In time the County filed suit against McDougal, seeking injunctive relief. Evidence was offered to the effect that McDougal had greatly expanded the scale of operation of the well by selling water for use in Mexico; there was evidence of heavy traffic in large tank trucks at all hours of the day and night, and these trucks were accused of generating noise, fumes, dust and other unpleasantness.

The Superior Court of Imperial County enjoined McDougal from "conducting a trucking operation on the premises similar to that which occurred commencing on June 30, 1972," based on its conclusion that McDougal's activities violated the 1970 zoning law.

The case was appealed and the California Supreme Court held that the restriction in the use permit prohibiting sale of water for use outside Imperial County could not be challenged by McDougal. *County of Imperial v. McDougal*, 19 Cal.3d 505, 138 Cal. Rptr. 472, 564 P.2d 14 (1977), *reh. denied*, 19 Cal.3d 619b, 138 Cal.Rptr. 472, 564 P.2d 14 (1977). Following this ruling, McDougal reopened the well. In obedience to the injunction entered by the Superior Court, McDougal has, since the reopening, required each purchaser of water to sign an affidavit that the water being bought will be used only in Imperial County.

The plaintiffs, who had bought water from McDougal for transportation to Mexico during 1972, appeared at the well and offered to buy water. They refused to sign the affidavit and McDougal refused to sell them water. They now seek injunctive relief restraining the County and the Superior Court from interfering with their right to purchase water and requiring McDougal to sell water to them.

#### *Jurisdiction*

The defendants raise 28 U.S.C. § 2283 (the "Anti-Injunction Act") as a bar to this proceeding. However, what is really being

sought in this lawsuit is not to enjoin a pending state court proceeding but rather to restrain the enforcement of an allegedly unconstitutional ordinance. It seems obvious that this court may, if otherwise appropriate, restrain the operation of an unconstitutional statute; surely it does not lose the right to do so merely because the statute has been tested in the state courts. In *Hale v. Bimco Trading Co.*, 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771 (1939), the Supreme Court held that a third party was not barred from challenging a statute merely because the same statute was also under litigation in the Florida courts. *Hale* is controlling here and this court concludes that section 2283 does not bar this lawsuit.

The defendants also argue that the proper method of attacking the California Supreme Court decision is by writ of certiorari to the United States Supreme Court, rather than by this lawsuit. However, the plaintiffs herein do not have the option of requesting such a writ. They are not parties to the state court action and can do nothing to appeal or otherwise influence the result. Hence the plaintiffs may proceed with the case in this court.

### Res Judicata

The defendants vigorously argue that the state court proceedings in this case are *res judicata*. Under the doctrine of *res judicata*, a final valid judgment is binding on the parties so as to prevent them from re-litigating the same case in either the same or a different forum. The one issue presented by the doctrine of *res judicata* as applied in this case is identity of the parties; if the parties are identical to those involved in the state litigation, then *res judicata* will bar this lawsuit.

For purposes of the doctrine of *res judicata*, "identity of parties" actually means either the identical parties to the first lawsuit, or those in "privy" with them. The plaintiffs herein were not parties to the California lawsuit, but the defendants contend that these plaintiffs are in privy with McDougal and hence are bound by the decision of the California courts.

First, the defendants point out that the plaintiffs filed an *amicus* brief with the California Supreme Court favoring McDougal's presentation there. However, an appearance as *amicus* is insufficient to bind the one so appearing to the result of the case. 1B Moore's Federal Practice 2d ¶ 0.411[1], page 1253; *Brown-Crummer Investment Co. v. Paulter*, 70 F.2d 184 (10th Cir. 1934).

Second, the defendants urge that the extent of involvement between the plaintiffs and McDougal is sufficient to place them in privy with one another. The resolution of this contention requires a careful definition of what is at issue in this lawsuit.

Initially, we note "There is no generally prevailing definition of privity that can be automatically applied to all cases involving the doctrine of res judicata," 29 Cal.Jur.2d, Judgments § 269, and "the determination of who are privies requires careful examination into the circumstances of each case as it arises," 50 C.J.S. Judgments § 788. Neither party has cited, and the court has failed to find, any cases sufficiently close to the facts of this case as to constitute controlling precedent. Accordingly, some general principles of privity and *res judicata* will now be examined.

An adjudication of property rights binds the parties to the judgment and their successors in interest. Accordingly, it is said that those successors are privies to the judgment. 50 C.J.S. Judgments § 788. Privity sometimes means "a mutual or successive relationship to the same rights of property, such an identification in interest of one person with another as to represent the same legal rights," 29 Cal.Jur.2d Judgments § 269. "It has been declared that privity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation, and that the rule is to be construed strictly to mean parties claiming under the same title," 46 Am.Jur.2d Judgments § 532, and "privity relates to persons in their relation to property and not to any question independent of property, and to make one a privy to an action, so as to bar him by the

adjudication, he must have acquired an interest in the subject matter of the action," 50 C.J.S. Judgments § 788.

The common theme running through all of the above citations, as well as through the various court decisions dealing with the problem of privity, is a common interest in property, which property is the subject matter of litigation. But the plaintiffs herein have no common property interest with McDougal. At issue in the state proceeding was McDougal's use permit; the use permit is a part of the land and runs with the land, as the California Supreme Court expressly held. The plaintiffs have no property interest in McDougal's land or in his use permit. Their interest is in the steps taken by the County to enforce what they perceive as an unconstitutional ordinance. Therefore, since the property interest which was litigated in the state courts was exclusively McDougal's and not the plaintiffs', it must follow that the plaintiffs were not in privity with McDougal and his state court judgment does not bar them from proceeding with this lawsuit.

### The Elements of Injunctive Relief

The traditional elements of injunctive relief include the following, all of which a plaintiff must satisfy if he is to have the relief he seeks:

(a) Irreparable injury,

(b) Probable success on the merits,

(c) Balance of equities in the plaintiff's favor, and

(d) Granting the injunction is in the public interest.

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86 (9th Cir. 1975).

In cases challenging the constitutionality of statutes or other legislative enactments, the first two elements predominate, *Hynes v. Grimes Packing Co.*, 337 U.S. 86, 98, 69 S.Ct. 968, 976, 93 L.Ed. 1231 (1948), although the court may not disregard the public interest, *Yakus v. United States*, 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944). Accordingly, the elements of relief will each be examined in the context of the present controversy.

### Irreparable Harm

A plaintiff who would be granted an injunction must first satisfy the court that without one he will suffer irreparable harm or, in other words, that his legal remedies are inadequate. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

In this case, the parties are in agreement that the harm the plaintiffs will suffer (if they do not get an injunction) is economic harm. Further, their damages are capable of reasonably precise calculation: to be specific, those damages would be the extra costs involved in driving to a more distant well to obtain water. Normally, the fact that mere economic injury is threatened is, of itself, sufficient grounds to deny equitable relief. However, in this case the court is presented with the extraordinary situation in which the plaintiffs have no adequate remedy at law for their damages because, although the plaintiffs can calculate their damages, there is no one from whom to collect those damages after they have been calculated.

Clearly, judicial immunity would shield the California courts at all levels from any liability. For his part, McDougal did no more than to obey an order of those courts on pain of going to jail, and it would be grossly unfair to hold him responsible in damages for obeying that order. The County of Imperial and its supervisors are the only defendants left, and they are protected from liability by California Government Code § 818.4, as interpreted by such cases as *O'Hagan v. Board of Zoning Adjustment*, 38 Cal.App.3d 722, 113 Cal.Rptr. 501 (1974). Thus, there is no one to compensate the plaintiffs, and it must follow that they have no remedy at law. Accordingly, the injury they would suffer in the absence of an injunction is irreparable.

### Success on the Merits

The power to regulate interstate and foreign commerce is granted exclusively to

Congress by the Constitution (Art. I, § 8, clause 3). State or local laws that directly interfere with interstate commerce are void, but the state may exercise its police powers in ways that do not "unduly" burden interstate commerce. *Southern Pacific Co. v. State of Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

In *Commonwealth of Pennsylvania v. State of West Virginia*, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923), the Court held that a natural gas-producing state could not, by statute, give gas customers within the state a preferred status over out-of-state customers. And in *West v. Kansas Natural Gas Co.*, 221 U.S. 229, 262, 31 S.Ct. 564, 574, 55 L.Ed. 716 (1910), the Court invalidated a state law which had the "character and purpose" of denying the owners of natural gas the right to take it out of the state. The Court said: "no state can by action or inaction *prevent*, unreasonably burden, discriminate against *or directly regulate*, interstate commerce or the right to carry it on." (221 U.S. at 262, 31 S.Ct. at 574; emphasis added)

These two cases controlled the result in *City of Altus, Oklahoma v. Carr*, 255 F.Supp. 828 (W.D.Tex.1966), *aff'd*, 385 U.S. 35, 87 S.Ct. 240, 17 L.Ed.2d 34 (1966). The City of Altus was challenging a Texas statute which forbade "drilling a well in Texas and transporting the water outside the State," 255 F.Supp. at 830. The court, relying on the natural gas cases, *supra*, found that the prohibition of the interstate shipment of water was unconstitutional.

In this case, the restriction in McDougal's use permit does not seek to regulate *land* use. It seeks solely to regulate *commodity* use—specifically, the transportation of water outside of the county. The California Supreme Court expressly found that "the limitation was intended to accomplish only what it clearly states, i. e., a prohibition against exporting water from the county." *County of Imperial, supra*, at page 512, 138 Cal.Rptr. 472, 564 P.2d 14. The restriction did not attempt to regulate land use, the conduct of a business, traffic in a residential area, or any other such activity.

Instead, the restriction is on its face a direct prohibition against interstate commerce in the water. The Commerce Clause will not permit such a direct prohibition any more than it would permit the interference with commerce attempted by the States of West Virginia, Oklahoma, or Texas in the cases cited above.

The cases cited by the defendants do not deal with the same sort of direct prohibition of commerce. One case, however, deserves further comment. In *Hudson County Water Co. v. McCarter*, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828 (1908), the Court upheld a New Jersey statute which prohibited the transportation of certain water outside the state. River water was involved, and the critical factor there was the limited property right in that water possessed by the party desiring to export it. The record does not show any such limit on McDougal's property interest in the water from his well.

Accordingly, there is a probability that the plaintiffs will succeed on the merits of their contention that the restriction in the use permit is unconstitutional.

### The Equities and the Public Interest

In *Yakus, supra*, certain wartime price regulations were under attack. Those regulations and the statute which authorized them provided a means of review, but the plaintiff there chose not to use the means provided. The Court found a compelling public interest in the subject matter of the statute as a whole and in preserving the scheme established for review of the regulations. Such factors are not present in this case, however.

There are no means by which these plaintiffs, in contrast to the plaintiff in *Yakus*, can challenge the restriction in the use permit other than the instant proceeding. The only other possible method of attack would be a political proceeding before the appropriate lawmaking entities of Imperial County, a method which the court in the *Altus* case found to be inadequate. Further, there is no compelling public interest which will be frustrated if the plaintiffs are

granted their injunction. There is no comprehensive use plan or water conservation plan the implementation of which will be blocked by an injunction here. All that is involved is one specific piece of real estate and one specific phrase in one specific use permit. Thus, the compelling public interest which existed in *Yakus* is entirely absent here, and the public impact of an injunction will be minimal.

The court recognizes that commercial use of McDougal's well may be an irritant to others in the neighborhood. However, assessing the nature and intensity of such irritation and balancing it against the injury the plaintiffs are suffering, the court finds that the balance tips towards the plaintiffs.

*Conclusion*

For the reasons discussed above, the court concludes that the plaintiffs are entitled to a preliminary injunction restraining the supervisors and their agents from enforcing the restriction in the use permit which prohibits sale of water for use outside Imperial County.

The court wishes to emphasize that this injunction pertains *only* to efforts by the County of Imperial to prohibit interstate commerce in the water. As the California Supreme Court noted, there is no reason why the county cannot, if it so desires, employ suitable means of land use control so as to prevent a public nuisance. There are many legitimate regulations which the police power would permit the county to impose; examples include limitations on operating hours of the well, limitations on noise in residential areas, restriction of trucks to designated truck routes, etc. The California Supreme Court noted that on remand the Superior Court could reach just such issues (19 Cal.3d at page 513, 138 Cal. Rptr. 472, 564 P.2d 14), and nothing in the instant opinion is to be construed to the contrary.